**Frederick M. RUSSILLO, Petitioner,**

v.

**The Honorable Tony SCARBOROUGH, Chief Justice of the New Mexico Supreme Court, Robert J. Lovato, Court Administrator, the Supreme Court of the State of New Mexico, Tommy E. Jewell, Presiding Judge of the Metropolitan Court of Bernalillo County, and the Metropolitan Court of Bernalillo County, Respondents.**

Civ. No. 88–1412 JB.

United States District Court, D. New Mexico.

Dec. 20, 1989.

Frank P. Dickson, Albuquerque, N.M., for petitioner.

John B. Pound, Santa Fe, N.M., for respondents.

MEMORANDUM DECISION
AND ORDER

J. THOMAS GREENE, District Judge.

This matter is before the court on defendants' motion to dismiss or in the alternative for summary judgment. Frank P. Dickson, Jr. represents the plaintiff, and John B. Pound represents the defendants. The court heard extensive argument of counsel and received post hearing supplemental memorandums and materials, after which the matter was deemed submitted for decision. Now being fully advised, the court enters its Memorandum Decision and Order.

FACTUAL BACKGROUND

Plaintiff was hired as Administrator of the Metropolitan Court of Bernalillo County, New Mexico, in January 1986 and served in that capacity until he was terminated on or about April 26, 1988. He was selected and appointed by the judges of the Metropolitan Court, and at the time of termination he was directly responsible to Judge Tommy E. Jewell, the Metropolitan Court's presiding judge.

On January 21, 1988, former New Mexico Supreme Court Justice Edwin Felter, at the direction of the New Mexico Supreme Court, initiated an investigation regarding irregularities at the Metropolitan Court as set forth in an audit and financial report of the State Auditor. The report disclosed interfund borrowing from bail bond accounts, cashing of employees' checks from court funds, and cash control problems.[1] During that investigation plaintiff was placed on administrative leave. Once the investigation was concluded, plaintiff was reinstated as Metropolitan Court Administrator. Three months later, on or about April 18, 1988, approximately $29,000 was stolen from the accounting department of the Metropolitan Court. After the theft, plaintiff submitted a written resignation to Judge Jewell, stating, "While I had felt the security measures we had instituted were adequate to meet our needs, this is apparently not the case." (Affidavit of Frederick M. Russillo, Exhibit E.) Judge Jewell rejected plaintiff's resignation. However, plaintiff was terminated shortly thereafter by Judge Jewell, acting at the direction of Tony Scarborough, then Chief Justice of the New Mexico Supreme Court.[2]

Plaintiff asserts four claims. *First*, that he has been deprived of a property interest without due process of law in violation of 42 U.S.C. § 1983. The property interest claimed is the right of plaintiff to continued employment so long as he satisfied his hiring authority, that is, the judges of the Metropolitan Court. Plaintiff also asserts in his first claim that he was wrongly denied a pre-termination or post-termination hearing and the right to have his termination decided by a majority of the Judges of the Metropolitan Court. *Second*, that he has been deprived of a liberty interest without due process of law in that he was terminated without a "name-clearing" hearing in violation of 42 U.S.C. § 1983. Plaintiff claims that the circumstances of his termination unfairly tarnished his good name and reputation. *Third*, that a Writ of Mandamus should be issued requiring his reinstatement as Metropolitan Court

---

1. The transcript of Fact Finding Hearing conducted by Justice Felter was made part of this record. Justice Felter made it clear that the inquiry "[was] a Supreme Court inquiry and not a Metropolitan Court inquiry, ... conducted under orders of the Supreme Court." Bernalillo County Metropolitan Court Fact Finding Hearing, p. 42 (Jan. 21, 1988).

2. Justice Scarborough states the reason for directing the termination of plaintiff as follows:
While no one has ever accused Mr. Russillo of taking the money, it is clear that whoever did take the money was able to do so because of lax procedures which continued to plague the

administrative office in the Metropolitan Court, and, in the judgment of the Supreme Court, could not have helped but had [sic] an adverse impact on the public's confidence in the New Mexico judiciary. I polled my fellow justices and the decision was made by the Court as a whole to instruct the presiding judge of the Metropolitan Court to terminate Mr. Russillo. Judge Jewell complied with that order.
Affidavit of Tony Scarborough ¶ 4. *See also* text accompanying note 7, *infra* (one purpose of superintending control power is to help maintain public respect for judiciary).

Administrator since the judges of the Metropolitan Court never took action to terminate him. *Fourth,* that defendants are in breach of contract in that they terminated plaintiff in contravention of New Mexico statutes and court personnel rules, which plaintiff claims formed the terms of his employment contract.[3]

Defendants' response to all of the claims essentially is grounded upon the prerogatives and authority vested in the Supreme Court of New Mexico by the Constitution of New Mexico under which the termination action taken is claimed to be fully authorized. Defendants also assert defenses of the Eleventh Amendment as to the Supreme Court and the Metropolitan Court, qualified immunity as to the individual defendants, and that in all events injunctive and mandamus relief is not appropriate.

The claims of plaintiff and defenses asserted by defendants will be addressed under the following categories: (I) The nature and scope of the power of superintending control of the Supreme Court of New Mexico; (II) Claims of deprivation of property and liberty; and (III) Contract claim.

## I. SUPERINTENDING CONTROL POWER OF NEW MEXICO SUPREME COURT

The Metropolitan Court was established as an inferior court within the New Mexico judicial system by the New Mexico Legislature in 1979.[4] The New Mexico Constitution disburses judicial power of the state to all courts, including inferior courts such as the Metropolitan Court,[5] but places in the Supreme Court alone the power of "superintending control over all inferior courts." Article VI, section 3, of the Constitution of New Mexico states:

The supreme court shall have original jurisdiction in quo warranto and mandamus against all state officers, boards and commissions, and *shall have a superintending control over all inferior courts;* it shall *also* have power to issue writs of mandamus, error, prohibition, habeas corpus, certiorari, injunction and all other writs necessary or proper for the complete exercise of its jurisdiction and to hear and determine the same.

(Emphasis added).

The fundamental issue in this case is whether the aforesaid constitutional grant of "superintending control" gives the New Mexico Supreme Court control over administrative functions of inferior courts.

### A. Scope of Power of "Superintending Control"

#### 1. *Control over Judicial Functions—Litigated Matters*

■ Plaintiff seeks to have this court narrowly limit the New Mexico Supreme Court's power of superintending control to only those matters which arise in the course of ordinary litigation. In this regard, plaintiff contends that the constitutional grant is only an historical power which allows the court to issue writs to inferior tribunals in order to direct the course and progress of litigation. In support of this position, plaintiff relies on the case of *State v. Roy,* 60 P.2d 646 (N.M. 1936). In that case, the New Mexico Supreme Court referred to the constitutional power of superintending control as "the *power to control the course of ordinary litigation in inferior courts,* as exercised at common law by the Court of King's

---

3. Plaintiff has abandoned a claim previously asserted under 42 U.S.C. § 1985. Petitioners Brief in Opposition to Motion to Dismiss, p. 21.

4. N.M.Stat.Ann. § 34-8-1, *et seq.* (1981) provides:

   With respect to the provisions of Sections 1 and 26 of Article VI of the State Constitution and all other provisions of law, the metropolitan court shall constitute a state magistrate court which is inferior to the district courts and is established by law pursuant to the provisions of Section 1 of Article VI of the State Constitution.

5. N.M. Const. art. VI, § 1 provides:

   The judicial power of the state shall be vested in the Senate when sitting as court of impeachment, a supreme court, a court of appeals, district courts, probate courts, magistrate courts and such other courts inferior to the district courts as may be established by law from time to time in any district, county or municipality of the state.

Bench and *by the use of writs specifically mentioned in the Constitution and other writs there referred to or authorized."* *Id.* at 661 (emphasis added). Plaintiff maintains that reported cases in New Mexico dealing with the power of superintending control only involve the exercise of power over a lower court by writ or other process in connection with litigated matters.[6]

Defendants also emphasize the *State v. Roy* case, because in another portion of the opinion the New Mexico Supreme Court very broadly described the scope of the power of superintending control:

"The power of superintending control is an extraordinary power. *It is hampered by no specific rules or means for its exercise.* It is so general and comprehensive that its complete and full extent and use have practically hitherto not been fully and completely known and exemplified. *It is unlimited, being bounded only by the exigencies which call for its exercise.* As new instances of these occur it will be found able to cope with them. And, if required, the tribunals having authority to exercise it will, by virtue of it possess the power to invent, frame, and formulate new and additional means, writs, and processes whereby it may be exerted."

*Id.* at 662 (emphasis added) (quoting 51 L.R.A. 111). Defendants also place emphasis on the later case of *State ex rel. Anaya v. Scarborough,* 75 N.M. 702, 410 P.2d 732 (1966), in which the New Mexico Supreme Court explained the unique and broad nature of the power of superintending control and how it can be used to maintain public respect for the judiciary:

One of the reasons for placing the power [of superintending· control] in the Supreme Court must have been to make the Supreme Court responsible to see that inferior courts do not depart from proper judicial activity, become dictatorial or oppressive in their conduct, or otherwise behave improperly so as to interfere with or *reflect upon the court system, or shake public confidence in the administration of justice and the judiciary.*

*Id.* 410 P.2d at 734 (emphasis added).[7]

The wording of Article VI, section 3 of the New Mexico Constitution makes it clear that the power to issue writs constitutes a grant of power *in addition to* the power of superintending control. In this regard, the New Mexico Supreme Court also said in *Scarborough,* "We recognize the power [of superintending control] as one separate and distinct from other power and jurisdiction granted this court in the constitution." 410 P.2d at 734; *see also Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778, 779 (1973) ("This court has a superintending control over all inferior courts *as well as* jurisdiction and power to issue writs of certiorari.") (emphasis added). This court is convinced that the power of superintending control extends beyond the issuance of writs in litigated matters.

### 2. *Control over Administrative and Personnel Functions*

■ Notwithstanding the broad scope of the power of superintending control described in the foregoing case law, plaintiff submits that Article VI, section 3 of the New Mexico constitution does not establish in the New Mexico Supreme Court power over administrative matters, such as exist in states which have adopted a "unified

---

**6.** *See, e.g., State ex rel. Dubois v. Ryan,* 514 P.2d 851 (N.M.1973) (writ vacating divorce decree); *Alexander v. Delgado,* 507 P.2d 778 (N.M.1973) (writ of certiorari); *Williams v. Sanders,* 459 P.2d 145 (N.M.1969) (writ prohibiting preliminary hearing by Juvenile Court); *State ex rel. Anaya v. Scarborough,* 75 N.M. 702, 410 P.2d 732 (1966) (writ disqualifying District Judge from murder case).

**7.** In *Scarborough* the court also stated: "We perceive our duty under our power of superintending control is to make certain, insofar as humanly possible, that the traditional respect

and high regard in which courts generally are held will in no way be encroached upon." *Id.* at 737. *See also Petition of Bd. of Comm'rs of State Bar,* 65 N.M. 332, 337 P.2d 400 (1959) (power of superintending control can be exercised to prevent "holding the court up to public scorn or bringing our judicial system into disrepute"). As noted in note 2, *supra,* Chief Justice Scarborough claims that he and other Supreme Court justices were concerned about the public perception of the New Mexico judiciary when directing plaintiff's termination.

court system." Plaintiff argues that specific constitutional or legislative authority must exist before a state Supreme Court has power to control the day-to-day operations and administrative details of inferior courts. In an impressive survey and analysis of constitutional and statutory provisions of the other states, plaintiff concludes that New Mexico, Montana and Wyoming are the only states with a power of superintending or supervisory control unaided by a constitutional or statutory provision relative to administration.[8] *See* Mont. Const. art. VII, § 2(2); Wyo. Const. art. V, § 2. However, like New Mexico, case law from Montana and Wyoming suggests that the power of superintending control over inferior courts encompasses administrative matters.[9] Furthermore, contrary to plaintiff's argument, New Mexico *does* have statutes addressing lower court administra-

tion by the New Mexico Supreme Court. Sections 34–9–1 to –10 of the New Mexico Code (1981 & Supp.1989) provide for an Administrative Office of the Courts ("AOC"). The AOC is supervised by a director "who shall be appointed and subject to removal by the Supreme Court of New Mexico." N.M.Stat.Ann. § 34–9–1 (1981). The AOC director, "under the supervision and direction of the supreme court" has the duty to "supervise all matters relating to administration of the courts." *Id.* at 34–9–3(A).

Defendants interpret the grant of "superintending control" as constituting a very broad power, sufficient to enable the Supreme Court to exercise administrative functions and render administrative decisions pertaining to all actions of inferior courts. In support of this position, defendants point out that historically the Su-

---

**8.** Plaintiff's survey of the judicial systems of the remaining forty-seven states, excluding New Mexico, Montana and Wyoming, reveals that thirty-nine states vest administration control over inferior courts with the state's highest court or with the chief justice of the state's highest court. Ala. Const. Amend. 3287, § 6.10; Alaska Const. art. IV, § 16; Ariz. Const. art. VI, § 3; Ark.Stat.Ann. § 16–10–101(a); Colo. Const. art. VI, § 2 (supreme court appoints administrator); Conn.Gen.Stat. § 51–1b(a); Del. Const. art. IV, § 13; Fla. Const. art. V, § 2; Hawaii Const. art. VI, § 6; Idaho Const. art. V, § 2; Ill. Const. art. VI, § 16; Iowa Const. art. V, § 4; Kan. Const. art. III, § 1; La. Const. art. V, § 5(A); Me. Const. art. IV, Pt. 1, § 1; Md. Const. art. IV, § 18(b); Mass.Gen.Laws ch. 211, § 3; Mich. Const. art. VI, § 3 (supreme court appoints administrator); Minn.Stat. § 480.13 (supreme court appoints administrator); Mo. Const. art. IV, § 4 (supreme court appoints administrator); Neb. Const. art. V, § 1; Nev. Const. art. VI, § 19; N.H. Const. pt. 2, art. 73–a; N.J. Const. art. VII, § 1; N.Y. Const. art. VI, § 28 (chief judge appoints administrator); N.D. Const. art. VI, § 3; Ohio Const. art. IV, § 5 (supreme court appoints administrative director); Okla. Const. art. VII, § 6; Pa. Const. art. V, § 10(a); R.I.Gen. Laws §§ 8–1–2, 8–15–1, 8–15–2; S.C. Const. art. V, § 4; S.D. Const. art. V, § 11; Tenn.Code Ann. § 16–3–502; Utah Const. art. VIII, § 12; Vt. Const. ch. 11, § 30; Wash.Rev.Code Ann. § 256.010 (supreme court appoints administrator); Va. Const. art. VI, § 4; W.Va. Const. art. VIII, § 3; Wisc. Const. art. VII, § 3;

Five states provide for court administration in some other manner. Cal. Const. art. VI, § 6 (judicial council system); Ga. Const. art. VI, § 9, ¶ 1 (judicial council system); Ky. Const.

§ 109 (Unified Court of Justice); N.C. Const. art. IV, § 2 (General Court of Justice); Or. Const. art. VII, § 9 (circuit courts have supervisory control over inferior courts);

Three states (Indiana, Mississippi and Texas) have no constitutional provision regarding superintending or administrative control over inferior courts.

**9.** The Montana Supreme Court "has general supervisory control over all other courts." Mt. Const. art. VII, § 2(2). In *State ex rel. Greely v. District Court of Fourth Judicial Dist.,* 180 Mont. 317, 590 P.2d 1104 (1979), the Montana Supreme Court used its power of supervisory control to direct substantial administrative changes in the district courts. Also, in *State ex rel. Ward v. Schmall,* 190 Mont. 1, 617 P.2d 140, 141 (1980), the Montana Supreme Court held that it was the only court that possessed the power of supervisory control, and that inferior state courts were not given such power under the state constitution.

The power of superintending control under the Wyoming constitution encompasses power in the Wyoming Supreme Court to prescribe rules of practice and procedure for inferior courts. *See White v. Fisher,* 689 P.2d 102, 106 (Wyo.1984); *Petersen v. State,* 594 P.2d 978, 982 (Wyo.1979); *State ex rel. Frederick v. District Court of Fifth Judicial Dist.,* 399 P.2d 583 (Wyo. 1965). Additionally, in the most recent case of *Bi–Rite Package, Inc. v. District Court of Ninth Judicial Dist.,* 735 P.2d 709 (Wyo.1987), the Wyoming Supreme Court stated that the power of superintending control includes inherent power over "business of the court" and "inherent power to take such action as is useful to the efficient functioning of the court." *Id.* at 714.

preme Court of New Mexico has exercised full administrative control over inferior courts.[10] Chief Justice Scarborough testified in his deposition that a customary practice of the Supreme Court, past and present, has been to assist in setting the work hours of inferior court personnel. Deposition of Tony Scarborough pp. 30–36. Also, Metropolitan Court judges have looked to the Supreme Court to assist in conducting financial audits and to implement computer accounting and management systems. *Id.* at 39–41. In this regard, plaintiff testified that on many occasions during his tenure the New Mexico Supreme Court, via the Administrative Office of the Courts, involved itself in administrative matters of the Metropolitan Court. Bernalillo County Metropolitan Court Fact Find Hearing, p. 14 (Jan. 21, 1988).

Defendants also emphasize the case of *Mowrer v. Rusk,* 95 N.M. 48, 618 P.2d 886 (1980), in which the New Mexico Supreme Court recognized that it is vested, as opposed to any other branch of government, with the power of supervision over personnel decisions by inferior courts. In *Mowrer* the court held that an Albuquerque city ordinance which placed broad discretion and power in the city's executive branch

over hiring, firing and supervision of municipal court personnel was unconstitutional under Article III, section 1 of the New Mexico Constitution, dealing with separation of powers, and under Article VI, section 3, dealing with the supreme court's power of superintending control.[11]

The phrase "unified judicial system" has been added to existing constitutional language in several states, and some states have found it desirable or necessary to adopt legislation specifically investing a state supreme court with power over administrative matters. However, it would appear that such amendments were unnecessary in states which already had unlimited grants of superintending control, such as New Mexico.[12] Courts from several states have recognized that the inherent power of courts embraces judicial administration.[13] In this regard, the Supreme Judicial Court of Massachusetts has said: "The inherent authority of the judiciary 'is not limited to adjudication, but includes certain ancillary functions, such as rule-making and judicial administration which are essential if the courts are to carry out their constitutional mandate.'" *Opinions of the Justices of the Senate,* 372 Mass.

---

**10.** The *New Mexico Code of Judicial Conduct* and the *Supreme Court General Rules* contemplate that administrative control and rule making authority is vested in the Supreme Court. The Supreme Court has the power to suspend judges, *In re Terry,* 101 N.M. 360, 683 P.2d 42 (1984); *In re Perea,* 103 N.M. 617, 711 P.2d 894 (1986), and to remove them from office altogether. N.M. Const., art. VI, § 32.

**11.** The *Mowrer* court stated:

N.M. Const. Art. VI, Section 3 vests superintending control in the Supreme Court over all inferior courts.... Any action of the executive or legislative branch of the municipal government which would preclude the Supreme Court or the district court from exercising its superintending or supervisory authority over the municipal court violates Article III and Article VI, Sections 3 and 13 of the New Mexico Constitution.
618 P.2d at 890–91.

**12.** In this regard, the Supreme Courts of Kentucky and South Dakota had unlimited power of superintending control prior and subsequent to amendments to the respective constitutions. *See Sidell v. Hill,* 357 S.W.2d 318 (Ky.1962), *cert. dismissed,* 371 U.S. 802, 83 S.Ct. 14, 9 L.Ed.2d 46

(1962); *In re Oahe Conservancy Subdistrict,* 85 S.D. 443, 185 N.W.2d 682 (1971).

**13.** *See, e.g., Opinions of the Justices to the Senate,* 363 N.E.2d 652, 659 (1977) (quoted in text after this footnote); *LaBarge v. Chief Admin. Justice,* 402 Mass. 462, 524 N.E.2d 59, 62 (1988) ("The regulation of court employees' conduct is essential for the judiciary to carry out its constitutional mandate and is, therefore, within its inherent authority."); *Ocean Council No. 12, New Jersey Civil Serv. Ass'n v. Ocean County,* 167 N.J.Super. 73, 400 A.2d 521, 522 (Ct.App. Div.1979) (Court clerks "are so closely involved with the operation and functioning of the day-to-day operations of the courts ... 'that they necessarily come within the regulatory control and superintendence' of the court."); *In re Brennan,* 126 N.J.Super. 368, 314 A.2d 610, 613 (Ct. App.Div.1974) (where supreme court has administrative rulemaking authority, it necessarily has full authority over internal management of courts); *Rutledge v. Workman,* 332 S.E.2d 831, 834 (W.Va.1985) ("courts have routinely vindicated their constitutional mandate to exercise the inherent power to administer the court system"). *See generally* J. Cratsley, *Inherent Powers of the Courts* (1980).

883, 363 N.E.2d 652, 659 (1977) (quoting *O'Coin's, Inc. v. Treasurer of Worcester*, 287 N.E.2d 608, 611 (Mass.1972)); *see also State v. Raynolds*, 164 P. 830, 832 (N.M. 1917) (quoting with favor the Wisconsin view that "the power of superintending control is unlimited and unrestrained; that it extends to judicial and ministerial errors").

This court is persuaded that the superintending control provision in the Constitution of New Mexico is a uniquely broad provision which establishes authority in the Supreme Court of New Mexico to perform administrative functions and render administrative decisions as to all courts of the State. While it is true that New Mexico's constitution does not specifically give the Supreme Court power over inferior court administration, case law in New Mexico and elsewhere describes the power of superintending control in terms which encompass administrative matters. In substance and effect New Mexico has a unified court system.[14] This does not end the matter, however. We must now determine whether the exercise of that power violated plaintiff's constitutional rights.

## II. CLAIMS OF DEPRIVATION OF PROPERTY AND LIBERTY

Plaintiff's first two claims are for constitutional violations under the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiff claims that the manner in which he was discharged as Metropolitan Court Administrator deprived him of property and liberty interests without due process of law.

### A. *Immunity of Courts as Entities*

■ Defendants seek to dismiss plaintiff's constitutional claims against the New

Mexico Supreme Court and the Metropolitan Court on the basis that they are state agencies and immune from suit under the Eleventh Amendment. This court agrees. In the absence of consent,[15] under the Eleventh Amendment a state and its agencies are immune from federal suits brought by its own citizens. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *Louis v. Supreme Ct. of Nev.*, 490 F.Supp. 1174 (D.C.Nev.1980) (immunity applied to state supreme court). This bar exists whether the relief sought is legal or equitable. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–101, 104 S.Ct. 900, 907–09, 79 L.Ed.2d 67 (1984). Further, state agencies are not considered a "person" under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 343–44, 99 S.Ct. 1139, 1146–47, 59 L.Ed.2d 358 (1979). Accordingly, the constitutional claims against the Supreme Court of New Mexico and the Metropolitan Court of Bernalillo County are dismissed. The individual state officials named in plaintiff's suit are not immune under the Eleventh Amendment or under 42 U.S.C. § 1983. *Id.; Edelman v. Jordan*, 415 U.S. 651, 676–77, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974).[16] Plaintiff's property and liberty claims will now be analyzed as to those defendants.

### B. *Property Claim*

Plaintiff's first claim is that he has been deprived of a property interest without due process of law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. The property interest claimed is the right to continued employment so long as plaintiff satisfied his hiring authority, that is, the judges of the Metropolitan Court. In this regard, plaintiff contends that under

---

**14.** Such a position is consistent with Professor Harry O. Lawson's article wherein he stated that as early as 1979, the state of New Mexico had already administratively unified its court system by funding it with state appropriations. *See*, Lawson, *State Court Unification*, Am.U.Law.Rev. 273, 277–79 (1982). Professor Lawson is Director of the MSJA program and Professor of Judicial Administration at the University of Denver College of Law.

**15.** In the New Mexico Tort Claims Act, N.M. Stat.Ann. §§ 41–4–1 to –27 (1978), New Mexico does consent to suit for certain tort claims, but none of the variety that plaintiff alleges.

**16.** The individual defendants are probably entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and its progeny. However, the court does not consider the application of qualified immunity in this case in light of its decision that no laws were violated by defendants.

1410

state law and under personnel rules promulgated by the New Mexico Supreme Court, only a majority of the judges of the Metropolitan Court had authority to terminate plaintiff, and not the Supreme Court or Chief Justice Scarborough. Plaintiff also contends that he was wrongly denied the right to a pre-termination or post-termination hearing.

■ Before examining the manner in which plaintiff was terminated, the nature of plaintiff's property interest must first be examined. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court was faced with a similar inquiry, and held that a non-tenured state college professor did not have any constitutionally protected property interest in his job. The Court explained: "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. at 577, 92 S.Ct. at 2709. *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Setlifee v. Memorial Hosp.*, 850 F.2d 1384, 1394–95 (10th Cir.1988); *Dickeson v. Quarberg*, 844 F.2d 1435, 1437–39 (10th Cir.1988); *Asbill v. Housing Auth. of Choctaw Nation*, 726 F.2d 1499 (10th Cir.1984); *Mitchell v. King*, 537 F.2d 385 (10th Cir.1976) (applying New Mexico law).

Under New Mexico law, plaintiff's claimed property interest in continued employment as Metropolitan Court Administrator is tenuous at best. Rule 3(A)(11) of the New Mexico Judicial Branch Personnel Rules ("NMJBPR") (1985) provides that the Metropolitan Court Administrator is a "confidential employee" whose employment is "at the pleasure of [his] hiring authority and who may be terminated at will." As a confidential employee, plaintiff was subject to the NMJBPR, but he was not entitled to the grievance rights provided for in the Rules, including the right to a pre-termination hearing. *See* NMJBPR Rules

3(A)(11), 33(A) (1985); Affidavit of Frank Kleinhenz, plaintiff's successor as Administrator of the Bernalillo County Metropolitan Court, ¶¶ 3, 4. Also, as a judicial branch employee, plaintiff was not entitled to the protections or procedures of the New Mexico Personnel Act. N.M.Stat.Ann. § 10–9–4(I) (1978).

In essence, plaintiff asserts violation of a constitutionally protected property interest because he was disciplined by the allegedly wrong disciplinary authority. In this regard, authority to discipline plaintiff was vested in the presiding judge of the Metropolitan Court, not in a majority of the Metropolitan Court judges as plaintiff claims. Rule 32(C) of the NMJBPR provides that the responsibility for initiating and administering any disciplinary action against a confidential employee "is vested in the justice or judge to whom the employee is responsible." By statute, the Metropolitan Court Administrator is directly responsible to and works at the direction of the presiding judge of the Metropolitan Court. N.M. Stat.Ann. § 34–8A–7(A) (1981). In this case, plaintiff in fact was terminated by the disciplinary authority to whom he was responsible, i.e., the presiding judge of the Metropolitan Court, albeit at the direction of the New Mexico Supreme Court.

In all events, provisions that outline who is responsible for employee discipline do not, standing alone, support a claim of a protected property right in future employment. In *Asbill v. Housing Authority of Choctaw Nation*, 726 F.2d 1499 (10th Cir. 1984), the plaintiff, like the plaintiff in the instant case, was an "at-will" state employee. The plaintiff in *Asbill* also argued that certain provisions in the employer's grievance procedures created a property interest. The Tenth Circuit disagreed, holding:

By themselves, however, these procedural protections do not support a "legitimate claim of entitlement" to future employment. At best, they merely support a claim of entitlement to the procedural protections themselves. At least five circuits have adopted the view that procedural protections alone do not create a protected property right in future em-

ployment; such a right attaches only when there are substantive restrictions on the employer's discretion. *See Suckle v. Madison General Hospital,* 499 F.2d 1364, 1366 (7th Cir.1974); *Cofone v. Manson,* 594 F.2d 934, 938 (2nd Cir. 1979); *Wells Fargo Armored Service v. Georgia Pub. Ser. Comm.,* 547 F.2d 938, 942 (5th Cir.1977); *Lake Michigan Col. Fed. of Teachers v. Lake Michigan Comm. Col.,* 518 F.2d 1091, 1095 (6th Cir.1975); *Hayward v. Henderson,* 623 F.2d 596, 597 (9th Cir.1980). For example, if a statute, regulation, or policy specifies the grounds on which an employee may be discharged, or restricts the reasons for discharge to "just cause shown."

*Id.* at 1502.

■ Based upon the foregoing, it is clear that under the applicable personnel rules and New Mexico law, plaintiff was an "at-will" employee who could have been terminated with or without cause, and who was not entitled to any grievance procedures or to notice or hearing at termination. Under these circumstances, plaintiff did not have a property interest that was subject to the due process protections of the Fourteenth Amendment, including any pre-termination or post-termination hearing.

### C. *Liberty Claim*

Plaintiff's second constitutional claim is that he has been deprived of a liberty interest without due process of law in that he was terminated without a "name-clearing" hearing. Plaintiff claims that because he was terminated shortly after the reported $29,000 theft at the Metropolitan Court, he was unfairly implicated in the theft, which caused damage to his name and reputation.

Even though plaintiff did not have a property interest in his job, a liberty interest may nevertheless exist so that procedural due process would require a hearing to enable the terminated employee the opportunity to clear his name. *Board of Regents v. Roth,* 408 U.S. 564, 573 n. 12, 92 S.Ct. 2701, 2707 n. 12, 33 L.Ed.2d 548 (1972); *Rich v. Secretary of the Army,* 735 F.2d 1220, 1226 (10th Cir.1984). Liberty generally encompasses two interests, "(1) the protection of one's good name, reputation, honor and integrity; and (2) one's freedom to take advantage of other employment opportunities." *Rich,* 735 F.2d at 1226–27; *see also Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. "[F]or an employee to make a successful liberty deprivation claim [he] must show that [his] dismissal resulted in the *publication* of information which was *false* and *stigmatizing*—information which had the general effect of curtailing [his] future freedom of choice or action." *Asbill v. Housing Auth. of Choctaw Nation,* 726 F.2d 1499, 1503 (10th Cir.1984) (citations omitted); *see also Dickeson v. Quarberg,* 844 F.2d 1435, 1439–40 (10th Cir.1988).

The first element of a liberty deprivation claim, publication, has been satisfied in this case. Plaintiff claims that there was "substantial notoriety" with respect to his termination and points to an article appearing in the *Albuquerque Journal* on April 28, 1988, as being typical of all the articles and information that were circulated at the time of his termination. Affidavit of Frederick M. Russillo ¶ 12.

■ Plaintiff has failed to establish the second and third elements of a liberty deprivation claim, that the publication be false and stigmatizing. Plaintiff asserts that because there was published reference to the $29,000 theft in connection with his termination, there is an "implication" that he had been guilty of "wrongdoing" or "perhaps criminal or opprobrious conduct." Affidavit of Frederick M. Russillo ¶ 12 (emphasis added). However, plaintiff does not claim and does not point to any newspaper article or other publication that contains *false* information about his termination that was communicated by one of the defendants. *See Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976) ("To impinge on a liberty interest, the stigmatizing information must be made public by the offending governmental entity."). Moreover, this court has reviewed the *Albuquerque Journal* article of April 28, 1988, which plaintiff states is typical of all other unnamed articles, and does not believe that it implies that plain-

tiff was fired for *stealing* the money. If anything, the article implies that Russillo was fired because Chief Justice Scarborough was dissatisfied with Russillo's *management* of Metropolitan Court funds.[17]

Reports that an employee did not get along with superiors, or that job performance was unsatisfactory, do not satisfy the third element which requires that the publication be "stigmatizing." *See Asbill*, 726 F.2d 1499 (10th Cir.1984) (discharge of agency employee for disputing authority of supervisor does not implicate liberty interest); *Hadley v. DuPage County*, 715 F.2d 1238, 1248 (7th Cir.1983) *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984) (dismissal of county superintendent for mismanagement does not impinge liberty interest). To be stigmatizing, published statements "must seriously damage his associations in the community" such that the plaintiff's "good name, reputation, honor, or integrity are at stake." *Board of Regents v. Roth*, 408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707–08, 33 L.Ed.2d 548 (1972). If, for example, the articles had contained a false statement from one of the defendants that plaintiff was fired for stealing Metropolitan Court funds, then the third requirement of stigmatizing effect would be met. *See id.* at 573, 92 S.Ct. at 2707 (charge of dishonesty would be stigmatizing). But plaintiff has failed to show that this occurred.

Based upon the foregoing, the deprivation of liberty claim is dismissed.

### III. CONTRACT CLAIM

Plaintiff alleges that he was wrongfully terminated from his employment as Court Administrator in direct contravention of New Mexico statutory law and judicially promulgated personnel rules, which plaintiff claims constituted an employment contract. This pendent state law claim will be analyzed under New Mexico contract law.

In *Forrester v. Parker*, 93 N.M. 781, 606 P.2d 191 (1980), the New Mexico Supreme Court held that an at-will employee had an implied employment contract that could give rise to contract damages where the employee and employer agreed to be bound by certain termination procedures. *See also Boudar v. E.G. & G., Inc.*, 106 N.M. 279, 742 P.2d 491 (1987); *Hernandez v. Home Educ. Livelihood Program, Inc.*, 98 N.M. 125, 645 P.2d 1381 (Ct.App.) *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982). However, in the case at bar any claim of an implied employment contract must fail because of the express terms governing plaintiff's employment. The operative personnel rules expressly stated that plaintiff was a "confidential" and "at will" employee. NMJBR Rule 3(A)(11) (1985). Furthermore, the same rules provide that confidential employees have no grievance rights. *Id.* at Rule 33(A). This negates any implication to the contrary.

---

**17.** Key parts to the *Albuquerque Journal* article are as follows:

Metropolitan Court administrator Fred Russillo was fired this week by order of Tony Scarborough, chief justice of the state Supreme Court.

Metro Court Presiding Judge Tommy Jewell said Wednesday that Scarborough told him to ask for Russillo's resignation, or fire him.

.   .   .   .   .

Scarborough did not tell Jewell why Russillo had to step down, Jewell said. Russillo had been Metro Court administrator since January 1986.

.   .   .   .   .

About $26,000 in fines and fees paid to Metro Court was stolen from the court's accounting offices last week. Two court employees were fired over the theft, but Jewell said he did not know if Russillo's firing was related to the incident.

.   .   .   .   .

Russillo was temporarily suspended by a Supreme Court order in January, in a dispute over a Metro Court practice of paying the court's spanish interpreter from a court trust fund.

Metro Court officials said at the time that the interpreter's state paychecks were arriving late, and that the court advanced money to her from the bail bond fund after she complained about the late payments. She then repaid the fund when her state checks arrived.

Russillo was cleared of any wrongdoing in connection with the payments, and was reinstated in February....

Albuquerque Journal, Apr. 28, 1988, at A1, A3. The article also contains a picture of Mr. Russillo, and underneath his name the caption reads: "Reason for dismissal unclear."

■ This court has already determined that New Mexico Judicial Branch Personnel Rule 32(C), which dictates that plaintiff be disciplined by the presiding judge of the Metropolitan Court, does not create a property interest in continued employment. For similar reasons, this provision, standing alone, does not constitute an employment contract that can give rise to breach of contract damages if it is not followed. Plaintiff was an at-will employee, who could be terminated with or without cause. Under New Mexico law, a discharged at-will employee cannot recover damages unless the employee's discharge is a violation of a clear public policy such as in retaliation for reporting violations of an employer. *Chavez v. Manville Prod. Corp.*, 108 N.M. 643, 777 P.2d 371, 375–78 (1989); *see also Garza v. United Child Care, Inc.*, 88 N.M. 30, 536 P.2d 1086, 1087 (Ct.App.1975) (at-will employee cannot recover breach of contract damages). Plaintiff has not alleged or shown that he was the victim of a retaliatory discharge or that his termination violated some other clear public policy. In short, this case does not fall within any recent exception in New Mexico to the traditional rule that a terminated at-will employee cannot recover damages under a breach of contract theory.

■ Even if NMJBPR 32(C) could be said to create an employment contract, under the facts of this case there was no breach because the presiding judge of the Metropolitan Court in fact did terminate plaintiff. While it is true that Judge Jewell acted under the direction of Chief Justice Scarborough and the New Mexico Supreme Court in terminating plaintiff, the letter of Rule 32(C) was followed inasmuch as Justice Scarborough had Judge Jewell do the actual firing. If this reasoning seems to allow form to triumph over substance, under this court's analysis of the New Mexico

Supreme Court's constitutional power of superintending control, the Supreme Court in all events had the power to terminate plaintiff, notwithstanding Rule 32(C). Since that is true, *a fortiori*, state law was not violated, and plaintiff's allegedly state law based contract was not breached, when the Supreme Court directed an inferior tribunal to so terminate plaintiff.

The action of the New Mexico Supreme Court in directing Judge Jewell, presiding judge of the Metropolitan Court, to terminate plaintiff's employment was an administrative act in the exercise of administrative power.[18] This court concluded in part I of this opinion that the New Mexico Supreme Court's power of superintending control includes lower court administration. As noted earlier, the power of superintending control "is an extraordinary power. It is hampered by no specific rules or means for its exercise." *State v. Roy*, 40 N.M. 397, 60 P.2d 646, 662 (1936); *see also O'Connor v. Matzdorff*, 76 Wash.2d 589, 458 P.2d 154 (1969) (state supreme court has inherent power to waive requirements of its rules) (citing *United States v. Breitling*, 61 U.S. (20 How.) 252, 15 L.Ed. 900 (1857)). Because of its uniquely broad scope, the power of superintending control should be exercised sparingly and only under unusual circumstances where other mechanisms are unavailable. *State ex rel. DuBois v. Ryan*, 85 N.M. 575, 514 P.2d 851 (1973); *State Game Comm'n v. Tackett*, 71 N.M. 400, 379 P.2d 54 (1962).

The New Mexico Supreme Court was faced with an unusual situation in this case; a situation involving the administration of inferior courts, and a situation which permitted the exercise of the power of superintending control. The New Mexico Supreme Court, and Chief Justice Scarborough in particular, were of the opinion

---

18. In dealing with an analogous exercise of administrative power, the Supreme Court in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), held that a state judge's act in demoting and discharging a probation officer was an administrative and not a judicial act. The Court said:

In the case before us, we think it clear that Judge White was acting in an administrative

capacity when he demoted and discharged Forrester. Those acts—like many others involved in supervising court employees and overseeing the efficient operation of a court—may have been quite important in providing the necessary conditions of a sound adjudicative system. The decisions at issue, however, were not themselves judicial or adjudicative. *Id.* at 229, 108 S.Ct. at 545.

that plaintiff's job performance as Metropolitan Court Administrator was not satisfactory. They felt that he was partly responsible for the accounting and cash security problems at the Metropolitan Court. *See supra* note 2. When the Presiding Judge of the Metropolitan Court failed to remedy the situation by calling for or accepting plaintiff's resignation, it became necessary for the Supreme Court to exercise its power of superintending control and to direct Judge Jewell to terminate plaintiff. For this, and the foregoing reasons, New Mexico state law was not violated and no employment contract was breached when the New Mexico Supreme Court directed the presiding Judge of the Metropolitan Court to terminate plaintiff. Accordingly, plaintiff's contract claim is dismissed.

Inasmuch as there were no violations of state or federal law in connection with plaintiff's employment termination, plaintiff's claims for injunctive relief and for a Writ of Mandamus must also be dismissed.

Based upon the foregoing, defendants' Motion for Summary Judgment is granted and contemporaneous herewith the court has issued Judgment. Both sides shall bear their own costs and attorneys' fees.

IT IS SO ORDERED.