Carl Steven ROBINSON

v.

**COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY and Philadelphia Municipal Court.**

Civ. A. No. 92–7273.

United States District Court, E.D. Pennsylvania.

June 30, 1993.

Alan B. Epstein, Jablon, Epstein and Wolf, Philadelphia, PA, for plaintiff.

Howard M. Holmes, Philadelphia, PA, for defendants.

## MEMORANDUM

LUDWIG, District Judge.

Defendants Court of Common Pleas of Philadelphia County and Philadelphia Municipal Court move for summary judgment on the ground that they are state entities entitled to Eleventh Amendment immunity.[1] Jurisdiction is federal question. 28 U.S.C. § 1331.

In February, 1988 plaintiff Carl Steven Robinson began working for the Court of Common Pleas of Philadelphia County and the Philadelphia Municipal Court in their Pretrial Services Division.[2] The complaint alleges that he was discharged in June, 1992 for lodging a complaint with a city agency concerning an asbestos removal project at his work site. This action under 42 U.S.C. § 1983 asserts a violation of plaintiff's First Amendment rights together with supplemental claims under the Pennsylvania Whistleblower Law and the Worker and Community Right–to–Know Act and for wrongful and retaliatory discharge. It requests compensatory and punitive damages, as well as declaratory and injunctive relief.

■ Under the Eleventh Amendment, a state entity may not be sued in federal court without its consent.[3] *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981). On the other hand, cities and counties, albeit political subdivisions of the state, do not enjoy constitutional immunity. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Mt. Healthy City School Dist. Board of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Here, defendants claim to be "arms" or "alter egos" of the State of Pennsylvania and entitled, as such, to Eleventh Amendment protection.[4] Plaintiff counters that defendants, while perhaps hybrid in nature, are more akin to counties and municipalities and are, therefore, not state entities for Eleventh Amendment purposes. In various contexts, this issue has received considerable analysis. As one commentator has observed:

It is not always easy to distinguish between state and local agencies at first glance. The courts will resolve the question by determining whether the agency is an "alter ego" of the state entitled to the protection of state immunity or a separate entity not so protected.

1 Jeremy C. Moore, et al., Moore's Federal Practice ¶ 0.60[2.–2], at 616–17 (2d ed. 1990) (footnotes omitted).

■ There is no doubt that a state's highest court is an Eleventh Amendment state entity. *See, e.g., Russillo v. Scarborough,* 727 F.Supp. 1402, 1409 (D.N.M.1989); *Roth-*

---

1. The amended complaint does not name individual defendants or the City of Philadelphia, and plaintiff has not sought leave to amend the complaint to do so. Defendants previously moved to dismiss on the ground of Eleventh Amendment immunity. Because it appeared that a ruling would require a fact record, defendants' motion was denied without prejudice to reinstatement as a motion under Fed.R.Civ.P. 56. Thereafter, the parties entered into a fact stipulation, and the motion was informally re-instated as a motion for summary judgment.

Summary Judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

2. His position was "R.O.R.—Bail Interviewer/Clerical Assistant II (part-time)."

3. Both legal and equitable relief is precluded. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 907–09, 79 L.Ed.2d 67 (1984). Also, in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), § 1983 was held not to override a state's Eleventh Amendment immunity. "Accordingly, the Amendment bars federal court actions under § 1983 that seek retrospective relief to be paid from the state treasury as well as actions that are nominally against the state or a state agency." Paul M. Bator, et al., Hart and Wechsler's The Federal Courts and the Federal System, at 1258 (3d ed. 1988).

4. The Court of Common Pleas of Philadelphia and the Philadelphia Municipal Court are trial courts within the First Judicial District, the territorial jurisdiction of which is Philadelphia. *See* 42 Pa.C.S.A. §§ 901, 911, 1101.

*stein v. Montana State Supreme Court,* 638 F.Supp. 1311, 1312 (D.Mont.1986); *Mattas v. Supreme Court of Pennsylvania,* 576 F.Supp. 1178, 1181–82 (W.D.Pa.1983); *Louis v. Supreme Court of Nevada,* 490 F.Supp. 1174, 1180 (D.Nev.1980). The few decisions to have resolved the issue have consistently held that lower courts are state entities as well. *See, e.g., Greater Los Angeles Council on Deafness, Inc. v. Zolin,* 812 F.2d 1103, 1110 (9th Cir.1987) (trial court); *Oliver v. Superior Court of Plymouth County,* 799 F.Supp. 1273, 1273 (D.Mass.1992) (trial court); *Russillo v. Scarborough,* 727 F.Supp. 1402, 1409 (D.N.M.1989) (metropolitan court); *Mathis v. Clerk of First Dept., Appellate Div.,* 631 F.Supp. 232, 235 (S.D.N.Y. 1986) (intermediate appellate); *N.A.A.C.P. v. California,* 511 F.Supp. 1244, 1257–58 (E.D.Cal.1981) (trial court), *aff'd,* 711 F.2d 121 (9th Cir.1983).

In our District, two decisions have held that courts of common pleas are state entities. *See Clark v. Court of Common Pleas,* 1992 WL 30551, *2, 1992 U.S.Dist. LEXIS 1834, at *5–6 (E.D.Pa. February 13, 1992) (Court of Common Pleas of Chester County); *Pokrandt v. Shields,* 773 F.Supp. 758, 764 (E.D.Pa.1991) (Court of Common Pleas of Schuylkill County). Another has held that the Pennsylvania Superior Court, an intermediate appellate court, is an arm of the state. *See Holt v. Superior Court of Pennsylvania,* 1992 WL 212428, *1, 1992 U.S.Dist. LEXIS 13053, at *3 (E.D.Pa. August 28, 1992). Another has reached the same conclusion as to the Philadelphia Traffic Court. *See In re Colon,* 114 Bankr. 890, 893 (Bankr. E.D.Pa.1990).

As further support, defendants cite Article V, § 1 of the Pennsylvania Constitution, which, in 1968, established a "Unified Judicial System":

> The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, . . .

Pa. Const. Art. 5, § 1 (1992). Commenting on the significance of a state judicial system, the Ninth Circuit noted:

> The fact that the defendant courts herein are the courts of entry into the state judicial system, rather than the courts of last resort, does not make them any less an integral part of the judicial branch of the [s]tate . . .

*N.A.A.C.P. v. California,* 511 F.Supp. at 1257–58.

Despite this considerable authority, plaintiff's position should not be characterized as frivolous. Plaintiff's contention is that the Eleventh Amendment was intended to bar private suits in federal court that would result in imposition of a liability payable from a state's treasury—and that this is not such a case. *See Bolden v. SEPTA,* 953 F.2d 807, 814 (3d Cir.1991) (in banc) (citing *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (3d Cir.1991)), *cert. denied,* —— U.S. ——, 112 S.Ct. 2281, 119 L.Ed.2d (1992); *SEPTA v. Pennsylvania Public Utility Com.,* 802 F.Supp. 1273, 1285 n. 21 (E.D.Pa.1992) ("Generally speaking, a state organization will not be regarded as the alter ego of the state unless payment of a judgment will have to be made out of the state treasury."); *see generally Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).[5]

If liability were imposed, it is undisputed that the judgment would be paid from the general funds appropriated to the First Judicial District by the City of Philadelphia and non-tax revenues raised by the Courts. Stipulation, at ¶ 13. As an example, in a recent age discrimination action against the Court of Common Pleas of Philadelphia County, the $38,000 settlement was funded from the City of Philadelphia's budget appropriation to the First Judicial District. *See* deposition of Geoffrey Gallas, at pp. 5–7.[6] The essence of

---

5. Historians agree that the Eleventh Amendment was passed primarily to assuage the states' fear of suits to collect unpaid Revolutionary War debts. *See* Erwin Chemerinsky, *Federal Jurisdiction,* § 7.2, at 331 (1989).

6. Dr. Geoffrey Gallas is the Executive Administrator of the Court of Common Pleas of Philadelphia.

plaintiff's argument is that despite the constitutional designation of trial courts as part of the state's judicial system, the source of the funds available to satisfy a judgment is the relevant municipality. Consequently, plaintiff contends, Eleventh Amendment immunity, which enures to the state, should not be extended to include a locally funded court.

While our Court of Appeals has not ruled on this issue, the Ninth Circuit has squarely decided in favor of Eleventh Amendment immunity despite local funding. In *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103 (9th Cir.1987), the district court held that the Eleventh Amendment did not protect the Superior Court of Los Angeles County inasmuch as that court received most of its funding from the county, not the state. The Court of Appeals reversed, stating:

> Although the County does pay most of the Superior Court's bills, state case law and constitutional provisions make clear that the Court is a State agency. *See* Cal. Const. art. 6 §§ 1, 5 (West Supp.1986); *Sacramento & San Joaquin Drainage Dist. v. Superior Court*, 196 Cal. 414, 432, 238 P. 687, 694 (1925). The official name of the court is the Superior Court of the State of California; its geographical location within any particular county cannot change the fact that the court derives its power from the State and is ultimately regulated by the State.

*Id.*, at 1110.

Moreover, much guidance from our Circuit is provided by analyses applied over two decades to determine whether agencies or semi-public entities are entities of the state. *See Bolden v. SEPTA*, 953 F.2d 807 (3d Cir.1991); *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989), *cert. denied*, 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989); *Kovats v. Rutgers, State University*, 822 F.2d 1303 (3d Cir.1987); *Port Authority Police Benev. Association v. Port Authority of New York & New Jersey*, 819 F.2d 413 (3d Cir.1987), *cert. denied*, 484 U.S. 953, 108 S.Ct. 344, 98

L.Ed.2d 370 (1987); *Blake v. Kline*, 612 F.2d 718 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980); *SEPTA v. Pennsylvania Public Utility Com.*, 802 F.Supp. 1273 (E.D.Pa.1992).

The seminal case, *Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247 (3d Cir.1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970), was reaffirmed in *Fitchik* in 1989, utilizing a simplified formulation. In *Fitchik*, the New Jersey Transit Corporation, an agency created by New Jersey statute, was held not to be an alter ego of New Jersey. The court set forth a three-factor test (enveloping eight of *Urbano*'s nine factors) to determine whether Eleventh Amendment immunity extends to an entity:

> (1) Whether the money that would pay the judgment would come from the state (this includes three of the *Urbano* factors—whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);
>
> (2) The status of the agency under state law (this includes four factors—how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and
>
> (3) The degree of autonomy the agency has.[7]

*Fitchik*, 873 F.2d at 659.

Defendants would apply *Urbano–Fitchik* only to executive branch and legislatively created agencies. The Third Circuit's concern, they argue, was to prevent states from statutorily conferring Eleventh Amendment immunity on entities created by the state's executive branch or the legislature. The cases, however, place no such limitation on the test's application.

While the most important *Urbano* factor concerns whether a judgment would be paid

---

**7.** One of the *Urbano* factors—whether the agency exercises a governmental or proprietary function—is no longer a valid criterion in light of

*Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). *Fitchik*, 873 F.2d at 659 n. 3.

from the state treasury, *Fitchik* cautioned that "no single *Urbano* factor is dispositive." 873 F.2d at 659. Accordingly, *Urbano–Fitchik* requires a comprehensive analysis of the entity in question.

### (1) Funding

Historically, Pennsylvania's statutory law has consistently placed the obligation for funding of the trial courts on county government and not the state. *See County of Allegheny v. Commonwealth,* 517 Pa. 65, 71–2, 534 A.2d 760, 763 (1987). Even after the Unified Judicial System was established by the 1968 Amendments, the Pennsylvania Legislature reaffirmed the principle that funding for the non-statewide courts "shall be paid by the respective political subdivisions." 42 Pa.C.S.A. §§ 3544, 3722. In 1987, however, Pennsylvania's Supreme Court struck down that statutory funding scheme as repugnant to the state Constitution. In *County of Allegheny,* the Unified Judicial System created by Article V was held to have mandated the State to fund the trial courts. *Id.,* 517 Pa. at 75–6, 534 A.2d at 765. The Pennsylvania Supreme Court stayed its order so as to give the Legislature the opportunity to appropriate the requisite funding. *Id.* To date, six years later, such legislation has not occurred, and the stay of *County of Allegheny* remains. *See Curtis v. Cleland,* 122 Pa.Commw. 328, 331, 552 A.2d 316, 318 (1988); *Curtis v. Cleland,* 137 Pa.Commw. 537, 541, 586 A.2d 1029, 1031 (1991).[8]

The Court of Common Pleas of Philadelphia receives some state money. In fiscal year 1990, the Court of Common Pleas revenues were comprised of: City of Philadelphia General Funds (57%),[9] locally generated non-tax revenues (7.9%), revenues from state government (21.2%), and revenues from grants (13.9%). In fiscal year 1991, its reve-

nues were: City of Philadelphia General Funds (56.6%), locally generated non-tax revenues (7.9%), revenues from state government (21.2%), and revenues from grants (13.-9%). In fiscal year 1992: City of Philadelphia General Funds (58%), locally generated non-tax revenues (6.7%), revenues from state government (17.5%), and revenues from grants (17.7%).

*Fitchik* noted that "[t]he most striking financial detail is that NJT's money does *not* come predominately from the state." 873 F.2d at 660 (emphasis in original). Instead, New Jersey provided "less than 33% of NJT's operating funds." *Id.* In comparison, Pennsylvania gives defendant courts an even smaller proportion of funding. In recent years, less than 22 percent of the Philadelphia Court of Common Pleas revenues have come from the state, and none of the revenue of the Municipal Court does so.[10]

Additionally, the salaries of all employees of the Court of Common Pleas of Philadelphia County and the Philadelphia Municipal Court are paid from City of Philadelphia appropriations. Paychecks are drawn on City accounts. Only the judges, who are conceded to be state officials, receive salaries paid from the state treasury.

Given the existing circumstances, funding is a strong factor arguing against according defendants Eleventh Amendment immunity at the present time.

### (2) Status Under State Law

Nonetheless, under Pennsylvania jurisprudential law, defendant courts are part of the state body politic. The Pennsylvania Constitution expressly identifies defendants as members of the Unified Judicial System. As such, they have a more integral or organic

---

**8.** *County of Allegheny* has been interpreted as granting the state legislature "a reasonable time" to pass the necessary legislation. *Bradley v. Casey,* 119 Pa.Commw. 180, 186, 547 A.2d 455, 458 (1988). In the meanwhile, a court of common pleas has been unsuccessful in attempting to compel state funding. *See, e.g., id.* (President Judge and officials of Common Pleas of Philadelphia unable in mandamus action to obtain funding from Commonwealth).

**9.** The General Fund of the City of Philadelphia consists of municipal tax revenue and borrowing. *See* Stipulation, at ¶ 5.

**10.** Although Act 1991–7A of the Laws of Pennsylvania, Subpart C, § 287, appropriates $2,685,000 for municipal court judges' salaries and expenses, defendants have stipulated that no state money has been received by that court in the past three years. *See* Stipulation, at ¶¶ 7, 9, 11.

status than an agency.[11] Even if, as plaintiff contends, defendants have the power to sue and be sued in their own name, the plain meaning of the Pennsylvania Constitution is that courts are state entities. *See County of Allegheny*, 517 Pa. at 75–6, 534 A.2d at 765.

### (3) Autonomy

Moreover, the uncontested facts demonstrate the degree of administrative authority exercised by the Pennsylvania Supreme Court in recent years over defendants' operations. Dramatic steps have emphasized the pyramidal structure and inclusive nature of the state's Unified Judicial System. Personnel, budgetary, judicial, and administrative matters have all received the Court's close scrutiny and control. Defendants recount that after *County of Allegheny*, which was decided in 1987, the following events occurred.

In December, 1990, the Court designated one of its members to oversee the administration of the Philadelphia courts "with full authority to approve, implement and monitor all changes and reforms deemed necessary and proper until further order of this Court." Judicial Administration Order, Docket No. 104 (Pa. December 19, 1990) (Bernice G. LaBoo, Chief Clerk, Supreme Court of Pennsylvania). It gave another justice supervisory authority over the Philadelphia courts' budget. *Id.* In October, 1991, it prohibited those courts from "alter[ing] the status quo of the administration of their respective courts or divisions without the prior approval of this Court through its designate Justice Ralph J. Cappy...." No. 112 Judicial Administration Order, Docket No. 1 (Pa. October 24, 1991) (Cappy, J.). On March 10, 1993, the justice in charge of administration noted that Supreme Court control and monitoring of the lower courts during the preceding two years had constituted "day-to-day involvement." Supreme Court of Pennsylvania, Directive from Justice Cappy, March 10, 1993, at 1.

Since 1991, the Philadelphia courts have been given zero-growth budgets, any increase to be subject to Supreme Court approval. *See* deposition of Geoffrey Gallas, at pp. 28–29. The justice supervising fiscal matters directed significant staffing cuts. *Id.*, at p. 37. For several years, until March 10, 1993, hiring and firing decisions within the Court of Common Pleas of Philadelphia required the approval of the designated justice in addition to that of the Philadelphia courts' administrative judge and Executive Administrator. *See* deposition of Geoffrey Gallas, at pp. 16, 21.[12] The Administrative Office of the Pennsylvania Courts, operating directly under the Supreme Court, now administers the procurement of all goods, supplies, and equipment for the Philadelphia courts. *See* No. 110 Judicial Administration Order, Docket No. 1 (Pa. June 27, 1991) (Papadakos, J.).

Given all of these considerations, the autonomy factor—or lack of autonomy—suggests that defendants are members of Pennsylvania's Unified Judicial System and, as such, state entities.

---

In sum, defendant courts, while still hybrids in fact, are state entities in law. Although it is stipulated that a judgment in this case would be paid by the City of Philadelphia, that does not mean the City would be legally obligated to do so. Given time, it would seem that the dictates of *County of Allegheny* will have to be complied with and that the state's Unified Judicial System will become fully realized. Under the Pennsylvania Constitution and the holding of its highest court, that reality now exists as an unequivocal part of state law. The state Legislature's reluctance to accept this fundamental construct, at least as regards central funding, does not preclude recovery from the State Treasury. If a judgment for money damages against a Philadelphia court were before the Pennsylvania Supreme Court, it is predictable, under *County of Allegheny*, that an order would be entered directing the State

---

11. Under Article V, the title of the highest judge is "The Chief Justice of Pennsylvania"—not of The Supreme Court of Pennsylvania.

12. Defendants have stipulated, however, that "[p]ersonnel of the Court of Common Pleas of Philadelphia County are hired, fired, and supervised by the Court [of Common Pleas]." Stipulation, at ¶ 15.

Treasurer to make payment. That order would no doubt be enforceable.

The Pennsylvania Legislature's continuing confrontation with the state Supreme Court is not a justiciable basis for considering the Unified Judicial System to have been permanently repudiated or somehow invalidated. Otherwise, the Legislature could strip away the trial courts' Eleventh Amendment protection despite the organic mandate of the Pennsylvania Constitution to the contrary. The Legislature's defiant position on court funding is unlawful and unsupportable. Under our form of government, the arrangement and allocation of powers must be respected. Judicial Review and the Rule of Law are not optional matters for a legislature's self-serving determination.

But these principles aside, even if the trial courts were regarded as hybrids in fact, the *Urbano–Fitchik* factors would still tilt in favor of state entity. The factors of status under state law and autonomy weigh heavily in that direction. To hold that they are overcome in this case by funding alone would be to ignore the specific instructions of *Fitchik.* Support for this conclusion can be found in the Ninth Circuit's decision in *Greater Los Angeles Council on Deafness,* 812 F.2d at 1110, as well as numerous cases in a variety of jurisdictions.

Accordingly, defendants' motion for summary judgment based on Eleventh Amendment immunity will be granted.