Frederick M. RUSSILLO, Plaintiff–Appellant,

v.

The Honorable Tony SCARBOROUGH, Chief Justice of the New Mexico Supreme Court; Robert J. Lovato, Court Administrator; Tommy E. Jewell, Presiding Judge of the Metropolitan Court of Bernalillo County, Defendants–Appellees,

and

The Supreme Court of the State of New Mexico; the Metropolitan Court of Bernalillo County, Defendants.

No. 90–2018.

United States Court of Appeals, Tenth Circuit.

June 18, 1991.

---

Harry Zimmerman, San Diego, Cal., for plaintiff-appellant.

John B. Pound of Montgomery & Andrews, P.A., Santa Fe, N.M., for defendants–appellees.

Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER, District Judge.*

JOHN P. MOORE, Circuit Judge.

Frederick Russillo was terminated as court administrator of a New Mexico Metropolitan Court at the direction of the New Mexico Supreme Court. Mr. Russillo appeals the district court's decision on summary judgment that he was not unconstitutionally deprived of a property or liberty interest, and the New Mexico Supreme Court did not exceed its power of superintending control. *Russillo v. Scarborough,* 727 F.Supp. 1402 (D.N.M.1989). We agree with the district court on all grounds and affirm.

## I.

The judges of the Metropolitan Court of Bernalillo County, New Mexico,[1] appointed Mr. Russillo in January 1986 to serve as court administrator. In that capacity, he was directly responsible to and subject to discipline by the presiding judge of the Metropolitan Court, Judge Tommy E. Jewell.[2]

In January 1988, the New Mexico Supreme Court initiated an investigation of accounting irregularities at the Metropolitan Court. During the investigation, Mr. Russillo was placed on administrative leave, but he was reinstated when the investigation ended.

In April 1988, approximately $29,000 was stolen from the accounting department of the Metropolitan Court. Mr. Russillo submitted a written resignation to Judge Jewell, stating: "While I had felt the security measures we had instituted were adequate to meet our needs, this is apparently not the case." Judge Jewell rejected the tendered resignation, but a few days later terminated Mr. Russillo at the instruction

---

* The Honorable G. Thomas Van Bebber, United States District Court Judge for the District of Kansas, sitting by designation.

1. The Metropolitan Court is an inferior court created by the state legislature under the authority of article VI, § 1 of the New Mexico Constitution.

2. N.M.Stat.Ann. § 34–8A–7(A) (1990) provides:

 The metropolitan judges of a metropolitan court shall select and appoint a court administrator who shall supervise all matters relating to the administration of the metropolitan court. The court administrator shall, after his appointment, be directly responsible to and work at the direction of the presiding judge of the metropolitan court.

 Mr. Russillo was also a "confidential" employee governed by Rule 32(C) of the New Mexico Judicial Branch Personnel Rules (1985):

 The responsibility for initiating and administering disciplinary action applicable to unclassified or confidential employees is vested in the justice or judge to whom the employee is responsible.

of Chief Justice Tony Scarborough of the New Mexico Supreme Court. In his affidavit, Justice Scarborough stated that while Mr. Russillo was not accused of stealing the money, the incident had occurred because of lax procedures plaguing the Metropolitan Court administrative office and reflected poorly on the state judiciary.

Mr. Russillo filed suit for wrongful termination against Justice Scarborough; the New Mexico Supreme Court; Robert J. Lovato, the Director of the Administrative Office of the Courts; Judge Jewell; and the Metropolitan Court. On summary judgment, the district court dismissed the claims against the courts based on Eleventh Amendment immunity, and rejected Mr. Russillo's breach of contract claim. The district court also dismissed his § 1983 property and liberty interest claims and his challenge to the state supreme court's exercise of superintending control. On appeal, Mr. Russillo disputes the last three rulings.

We review summary judgment decisions de novo, applying the same standards employed by the trial court under Fed.R.Civ.P. 56(c). Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. We view the record in the light most favorable to the nonmoving party. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988).

## II.

■ Mr. Russillo claims under § 1983 that defendants deprived him of due process protection for his property interest in his job when they fired him without pre-termination notice or a post-termination hearing. The district court held as a matter of law that Mr. Russillo does not have a constitutionally protected property interest in his job. We agree.

In the employment context, the Supreme Court has defined a property interest as a legitimate expectation in continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The existence of a property interest is "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

■ Under New Mexico law, a public employee has a protected property interest only if he has an express or implied right to continued employment. *Lovato v. City of Albuquerque*, 106 N.M. 287, 289–90, 742 P.2d 499, 501–02 (1987). Mr. Russillo does not dispute the district court's finding that under applicable personnel rules and New Mexico law he was an at-will employee, serving at the pleasure of the Metropolitan Court. Ordinarily, an employee's at-will status forecloses a property interest claim because the employee has no legitimate expectation of future employment. *See Bishop v. Wood*, 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–79, 48 L.Ed.2d 684 (1976).

Mr. Russillo focuses his appeal on the novel claim that he has a property interest in the expectation that he will only be terminated by the Metropolitan Court independently exercising its authority. He contends that expectation was violated because the New Mexico Supreme Court ordered the Metropolitan Court to fire him.

■ Mr. Russillo's theory redefines the nature of a protected property interest to include the manner of his termination. However, the Supreme Court rejected this approach in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), stating: " 'Property' cannot be defined by the procedures provided for its deprivation...." Although this statement was made in the context of holding that the scope of a property interest cannot be limited by accompanying procedures, we believe it also supports the converse conclusion that the scope of a property interest cannot be expanded by reference to procedures. We have followed the Supreme Court's dictate in this circuit, stating for instance that a property interest is defined by substantive rather than procedural restrictions on an employer's discretion to terminate an em-

ployee. *Campbell v. Mercer*, 926 F.2d 990, 993 (10th Cir.1991), citing *Asbill v. Housing Auth. of Choctaw Nation*, 726 F.2d 1499 (10th Cir.1984). Similarly, we have held that grievance procedures, such as meetings with particular authorities, do not themselves create a property interest in continued employment. *Carnes v. Parker*, 922 F.2d 1506, 1511 (10th Cir.1991).[3]

Any suggestion in New Mexico case law that procedures create a property interest is erroneous. Mr. Russillo relies on *Jacobs v. Stratton*, 94 N.M. 665, 667, 615 P.2d 982, 984 (1980), which stated without elaboration that "procedures gave [the employee] an entitlement" and cited *Roth*. *See also Graff v. Glennen*, 106 N.M. 668, 748 P.2d 511 (1988) (in dicta, repeated language from *Jacobs*). However, in an appeal after remand in *Jacobs*, the New Mexico Court of Appeals acknowledged *Loudermill* and declined to decide the case based on a property interest claim. *Jacobs v. Meister*, 108 N.M. 488, 493–94, 775 P.2d 254, 259–60 (N.M.Ct.App.), *cert. denied*, 108 N.M. 582, 775 P.2d 1299 (1989).

■ Given the Metropolitan Court's unrestricted authority to terminate Mr. Russillo for any reason, we discern no legitimate expectation of *continued* employment, whatever Mr. Russillo's expectations about how he would be fired. We agree with the district court's assessment that "provisions that outline who is responsible for employee discipline do not, standing alone, support a claim of a protected property right in future employment." *Russillo*, 727 F.Supp. at 1410.

### III.

■ Mr. Russillo also asserts under § 1983 that his liberty interest in his good name and reputation was violated when he was discharged without a name-clearing hearing. He was terminated shortly after $29,000 had been stolen from the Metropolitan Court and publicity accompanying the two events implied he was guilty of wrong-

doing, Mr. Russillo contends. The following excerpts from an article appearing on April 28, 1988, in the *Albuquerque Journal* are typical of the publicity:

Metropolitan Court administrator Fred Russillo was fired this week by order of Tony Scarborough, chief justice of the state Supreme Court.

Metro Court Presiding Judge Tommy Jewell said Wednesday that Scarborough told him to ask for Russillo's resignation, or fire him.

. . . .

Scarborough did not tell Jewell why Russillo had to step down, Jewell said. Russillo had been Metro Court administrator since January 1986.

. . . .

About $26,000 in fines and fees paid to Metro Court was stolen from the court's accounting offices last week. Two court employees were fired over the theft, but Jewell said he did not know if Russillo's firing was related to the incident.

In our recent en banc decision, *Melton v. City of Oklahoma City*, 928 F.2d 920, 927 (10th Cir.1991), we stated that a liberty interest claim exists "[w]hen a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities. . . . " We held that a city did not violate a police officer's liberty interest when a police department spokesperson accurately told the press that the department was investigating perjury allegations against the officer. *Id.* at 922, 924. Several controlling factors were: (1) the police department's statements were not false nor were they intended to create false implications, (2) the police department did not "charge" the officer with perjury, and (3) the police department was not the original

---

**3.** Although procedures do not create constitutional property interests, we did state in *Carnes* that "[p]rocedural protections . . . can sustain an entitlement to the procedures themselves."

*Id.* If Mr. Russillo had a right to be terminated only by the Metropolitan Court, that right was satisfied because Judge Jewell, presiding judge of the Metropolitan Court, did discharge him.

source of the potentially stigmatizing information. *Id.* at 928–29.

Here, New Mexico court officials did not make any false statements. Judge Jewell stated the New Mexico Supreme Court had sought Mr. Russillo's termination, and he did not know whether there was any connection to the recent theft incident. None of the defendants "charged" Mr. Russillo with stealing the funds. Any possible impression that Mr. Russillo was fired for financial wrongdoing was created by the newspaper's juxtaposition of that information with news about missing funds, not by Judge Jewell's statements. Moreover, we agree with the district court that the article may have implied that Mr. Russillo was fired for mismanagement but did not suggest he actually stole the money, *Russillo,* 727 F.Supp. at 1412; mismanagement is not equivalent to "dishonesty or immorality that might seriously damage an employee's standing ... in the community." *Melton,* 928 F.2d at 927. Because defendants did not disseminate any false and stigmatizing

charges against Mr. Russillo, they did not violate his liberty interest in his reputation.

## IV.

 Mr. Russillo also contends Justice Scarborough exceeded the scope of his authority under the New Mexico constitution by ordering the Metropolitan Court to fire him, and therefore "the actions initiated by the Honorable Tony Scarborough, The Supreme Court and Robert J. Lovato and carried out by Tommy E. Jewell are unlawful." He seeks a writ of mandamus reinstating him to his position as the remedy for this alleged wrong.[4] We review this state law issue de novo,[5] *Salve Regina College v. Russell,* — U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), and conclude Justice Scarborough acted within the bounds of his authority.

Mr. Russillo acknowledges that the state supreme court has superintending control over the Metropolitan Court. Article VI, § 3, of the New Mexico Constitution gives the state supreme court such control over inferior courts.[6] The Metropolitan Court is

---

4. Fed.R.Civ.P. 81(b) abolished the writ of mandamus, but federal courts retain the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," under 28 U.S.C. § 1651.

Although neither party raises the issue, we recognize that the question of federal courts' authority to command the actions of state courts is a sensitive one. In *Van Sickle v. Holloway,* 791 F.2d 1431, 1436 n. 5 (10th Cir.1986), we stated in dicta that a federal court does not have the authority to issue a writ in the nature of mandamus to alter a final state court judgment. *See also Davis v. Lansing,* 851 F.2d 72, 74 (2d Cir.1988) (defendant sought writ compelling state judge to seat certain jurors; court stated in dicta that "federal courts have no general power to compel action by state officials...."); *Clark v. State of Washington,* 366 F.2d 678, 681–82 (9th Cir.1966) (federal court has no power to issue writ of mandamus directing state court in the performance of its duties, including disbarment proceedings). *But see In re Grand Jury Proceedings,* 654 F.2d 268, 278–79 (3d Cir.), *cert. denied, Wright v. United States,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) (federal district court may order state court judge to confer with United States attorney because "ban on federal directives to state courts is not absolute...."). Because we agree with the district court's assessment that the New Mexico Supreme Court acted within its constitutional authority, we do not decide whether we would

have the authority to issue a writ commanding reinstatement if the state supreme court had acted unconstitutionally.

5. Again, neither party raises the issue, but we note that jurisdiction over state claims when the federal claims have been dismissed is discretionary. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988); *Enercomp, Inc. v. McCorhill Pub., Inc.,* 873 F.2d 536, 545 (2d Cir.1989); *Graf v. Elgin, J. & E. Ry. Co.,* 790 F.2d 1341, 1347–48 (7th Cir.1986); 13B Wright & Miller, *Federal Practice & Procedure* § 3567.1, at 134–37, n. 20 (1991). Considerations of comity are strong when, as here, the state claim involves purely state law and policy and raises a novel issue. However, countervailing considerations of judicial economy are also strong when the federal claims are dismissed on the merits, after the parties have briefed and argued the state law issue; fairness to the parties is an additional factor which supports retaining jurisdiction because the state courts are a party to this dispute. Therefore, the district court did not abuse its discretion in deciding the state law issue on the merits.

6. N.M. Const. art. VI, § 3:

The supreme court shall have original jurisdiction in *quo warranto* and *mandamus* against all state officers, boards and commissions, and shall have a superintending control

an inferior court established by the state legislature under the authority of article VI, § 1, of the constitution.[7]

The disputed issue is whether the power of superintending control includes the authority to order the Metropolitan Court to terminate its court administrator. Mr. Russillo argues that superintending control applies only to matters occurring in the ordinary course of litigation, not to administrative matters. We believe his argument rests on a false dichotomy. Administrative matters ultimately affect the progress of litigation in the court system as much as issues tied directly to specific cases.

Although the New Mexico courts have not squarely addressed the issue before us, we find sufficient guidance to conclude Justice Scarborough acted within the bounds of the state constitution. In *State v. Roy*, 40 N.M. 397, 60 P.2d 646, 660 (1936), the New Mexico Supreme Court exercised superintending control to promulgate uniform rules of pleading, practice and procedure. The court stated, "The power of superintending control is the power to control the course of ordinary litigation in inferior courts, as exercised at common law by the Court of King's Bench and by the use of writs...." However, the *Roy* court also stated:

> The superintending control over inferior courts does not limit this court to the promulgation of rules of court which have for their purpose the regulation of matters of relatively minor importance, which merely govern the everyday routine of courts and enable them to act as such. These should rightly be left to the district courts themselves. For example,

the trial judge in each district is better able to determine what routine rules will expedite the business of his particular court. We are concerned with the more important rules of adjective law governing the trial of lawsuits and furnishing the machinery by which litigants may secure effective enforcement of their substantive rights.

*Id.* 60 P.2d at 661. The statement that superintending control "does not limit" the state supreme court to directing routine matters implies that the court has the authority to oversee such matters, although the *Roy* court also emphasized that administrative matters should generally be left to the inferior courts for practical reasons. The power of superintending control " 'is hampered by no specific rules or means for its exercise.... It is unlimited, being bounded only by the exigencies which call for its exercise, ...' " *Id.* at 662 (citation omitted).

The New Mexico Supreme Court later clarified the purpose of superintending control:

> to make the Supreme Court responsible to see that inferior courts do not depart from proper judicial activity, become dictatorial or oppressive in their conduct, or otherwise behave improperly so as to interfere with or reflect upon the court system, or shake public confidence in the administration of justice and the judiciary.

*New Mexico ex rel. Anaya v. Scarborough*, 75 N.M. 702, 706, 410 P.2d 732, 734 (1966). In *Anaya*, the New Mexico Supreme Court exercised superintending control to disqualify a judge from a case because of allegations of personal bias. Although the dis-

---

> over all inferior courts; it shall also have power to issue writs of mandamus, error, prohibition, habeas corpus, certiorari, injunction and all other writs necessary or proper for the complete exercise of its jurisdiction and to hear and determine the same.

**7.** The state constitution, N.M. Const. art. VI, § 1, authorizes the legislature to create inferior courts:

> The judicial power of the state shall be vested in the senate when sitting as court of impeachment, a supreme court, a court of appeals, district courts; probate courts, magis-

trate courts and such other courts inferior to the district courts as may be established by law from time to time in any district, county or municipality of the state.

The legislature exercised that authority to create metropolitan courts, N.M.Stat.Ann. § 34–8A–2 (1981):

> [T]he metropolitan court shall constitute a state magistrate court which is inferior to the district courts and is established by law pursuant to the provisions of Section 1 of Article VI of the state constitution.

pute arose out of a particular lawsuit, the court did not confine its discussion of the purpose of superintending control to such contexts.

Here, the New Mexico Supreme Court acted within the scope of its superintending control authority to maintain "public confidence in the administration of justice and the judiciary." *Id.* As the district court noted, the situation was unusual:

> The New Mexico Supreme Court, and Chief Justice Scarborough in particular, were of the opinion that plaintiff's job performance as Metropolitan Court Administrator was not satisfactory. They felt that he was partly responsible for the accounting and cash security problems at the Metropolitan Court.... When the Presiding Judge of the Metropolitan Court failed to remedy the situation by calling for or accepting plaintiff's resignation, it became necessary for the Supreme Court to exercise its power of superintending control and to direct Judge Jewell to terminate plaintiff.

*Russillo,* 727 F.Supp. at 1413–14.

 Mr. Russillo raises several other unavailing arguments. He asserts, without supporting argument, that state supreme court control over administrative matters must be authorized by statute. Although the court administration statute makes the Metropolitan Court administrator "directly responsible" to the Metropolitan Court, N.M.Stat.Ann. § 34–8A–7(B), that language does not preclude the supreme court's exercise of overriding superintending control. Similarly, the statutory provision that the Director of the Administrative Office of the Courts shall be subject to removal by the state supreme court, N.M.Stat.Ann. § 34–9–1, does not limit the supreme court's authority over the Metropolitan Court. In fact, because the Director "supervise[s] all matters relating to administration of the courts," N.M.Stat. Ann. § 34–9–3(A), it demonstrates that the state supreme court has ultimate authority over administrative matters.

 Mr. Russillo's discussion of the law in other states provides interesting background but no binding authority. We find

no guidance in those cases, having satisfied ourselves that the New Mexico courts have sufficiently delineated the superintending authority of the New Mexico Supreme Court. Finally, Mr. Russillo contends that "any administrative authority granted by superintending control ... is limited to constitutionally-created courts and not extended to legislatively-created courts." The district court did not explicitly address this twist on the issue, and Mr. Russillo provides no evidence that he raised this issue at trial. Thus, the issue is not properly before us. 10th Cir.R. 28.2(d); *see Farmers Ins. Co. v. Hubbard,* 869 F.2d 565, 570 (10th Cir.1989) (appellate court does not address new issues on appeal).

### V.

Mr. Russillo has failed to show that he has a protected property interest or that his liberty interest in his reputation was violated by defendants. Therefore, the district court correctly dismissed on summary judgment his § 1983 claims that he was denied due process protection for those interests. The district court also correctly decided the New Mexico Supreme Court acted within its constitutional authority when it ordered his termination.

AFFIRMED.