**Carol F. LUTTJOHANN, Plaintiff,**

v.

**GOODYEAR TIRE AND RUBBER COMPANY, Defendant.**

No. 94–4102–RDR.

United States District Court, D. Kansas.

May 21, 1996.

Amy C. Bixler, Alan G. Warner, Topeka, KS, Allen A. Ternent, Topeka, KS, for plaintiff.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964 which is now before the court upon defendant's motion for summary judgment. After reviewing defendant's lengthy list of uncontroverted facts and plaintiff's response, the court believes the following facts appear uncontroverted.

### FACTS

Plaintiff was hired by defendant on July 11, 1988. She left employment with defendant involuntarily on August 30, 1991. Plaintiff trained to be and worked as an area manager. As such, she was responsible for pay records, time records, work flow, discipline, safety and quality of work at the Goodyear plant in Topeka, Kansas. Other female area managers were employed by defendant during the relevant time period of this case.

In March of 1989, plaintiff sent an employee named Larry Smith home for refusing to do a job, in other words, insubordination. This "cooling off" period was part of defendant's disciplinary system. As she was escorting Smith out, Smith remarked, "you need to get some dick. Maybe that will make you feel better." This comment was

reported to plaintiff's supervisor, Alan Stueve. However, Smith was paid for the time he was off work, and plaintiff believed her supervisors failed to back her up in imposing discipline upon the employee.

In November 1989, Stueve told plaintiff she looked like a bag of potatoes. Plaintiff considered this a derogatory comment relating to her size and personal appearance.

While working for defendant, plaintiff was transferred to different business centers at the Topeka Goodyear plant. In November 1989, plaintiff was transferred to the earthmovers business center, where she was supervised by David Lovell. Most of plaintiff's complaints concern her treatment by Lovell.

Plaintiff stated in her deposition that Lovell was abusive to her more than other employees in the same kinds of situations. More specifically, plaintiff described Lovell as often angrily using the term "goddam fucking" as an adjective phrase in supervising plaintiff; e.g., "You should be able to answer without your goddam fucking notes." One time, according to plaintiff, Lovell called her a "goddam fucking liar." Plaintiff asserted in her deposition that this kind of verbal abuse occurred on a daily basis. Plaintiff conceded that Lovell was abusive to other employees as well, but she considered herself singled out unfairly at times. Plaintiff tolerated this situation and did not complain until June 1991.

In her deposition, plaintiff concurred that management informed her there were certain specific unsatisfactory incidents in her job performance. She denied she was aware that management considered her overall performance unsatisfactory.

Plaintiff filed a complaint with defendant's EEO office after she heard that Lovell had implied to other employees that she was having an affair with a fellow worker. This occurred in June 1991. Plaintiff complained about that incident and the alleged history of abusive language and treatment. After an in-house investigation, plaintiff was told in August 1991 that the incident of the implied affair happened; that it should not have happened; and that it would not happen again. Before this result was reported, plaintiff filed another in-house complaint alleging abusive language. Plaintiff left her employment with defendant before the second complaint was investigated.

On August 30, 1991, at a managerial meeting, plaintiff was informed that the company had mandated a 10% reduction in salaried employees and, therefore, she was being terminated. Plaintiff asked if this was a reduction in force, and if it was, why wasn't she being laid off. Layoff benefits and unemployment compensation equalled 80% of plaintiff's salary. In response to plaintiff's inquiry, plaintiff was given an agreement to sign. The agreement stated:

"It is agreed that The Goodyear Tire and Rubber Company will permit Carol Luttjohann to receive salary layoff benefits in lieu of discharging her. Carol also understands and agrees she will not return to active duty at Goodyear nor will she file any legal action against Goodyear."

Plaintiff signed the agreement. She was not recalled to work at the Goodyear plant.

### PLAINTIFF'S CLAIMS

Plaintiff's claims are that: she worked in a hostile working environment; she suffered disparate treatment on the basis of her sex; and she was discharged in retaliation for complaining about sexual discrimination. The pretrial order details plaintiff's claim of disparate treatment as including transfers without independent grounds, closer scrutiny from supervisors, nonpayment for days off, forced use of vacation time for days off, and special reporting requirements.

### SUMMARY JUDGMENT STANDARDS

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct.

2505, 2509–10, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

## HOSTILE WORK ENVIRONMENT

Defendant's first argument in the summary judgment motion addresses plaintiff's hostile work environment claim. Although offensive language may have been directed at plaintiff by persons other than David Lovell, it appears that plaintiff's hostile work environment claim concerns statements from Lovell. Defendant argues that: 1) the language was not offensive to plaintiff; 2) the language was not sufficiently pervasive or offensive to be actionable; and 3) that defendant should be exonerated from liability due to its corrective actions in response to plaintiff's complaint. We reject these arguments.

Plaintiff has stated in her deposition that she was offended by Lovell's conduct and that she was too intimidated to approach him about it. She also claims that she eventually complained twice to the company about his conduct. Reading the record in a light favorable to the plaintiff, we must find that Lovell's conduct was offensive to plaintiff.

■ Defendant's second contention concerns whether Lovell's conduct was so pervasive and offensive that it could be considered sufficient to create a hostile working environment. This case is different from most cases alleging sex discrimination from a hostile working environment because the alleged pervasive offensive language ("fucking" or "goddam fucking") is gender-neutral and there is no allegation of a sexual advance. Any other incident (including the alleged implication of an affair) appears too isolated to alter an employee's conditions of employment. So, the issue becomes whether the alleged daily profane, albeit gender-neutral, yelling is sufficient to state a hostile work environment claim. We believe the answer is "yes" as long as there is proof that the profane ranting occurred because of an employee's gender. *Curde v. Xytel Corp.*, 912 F.Supp. 335, 340 (N.D.Ill.1995) citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 24–25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993) (Scalia, J., concurring) (Title VII is implicated so long as the plaintiff's "working conditions have been discriminatorily altered."); *Doe v. R.R. Donnelley & Sons*, 42 F.3d 439, 443 (7th Cir.1994) (sexual harassment "encompasses all forms of conduct that unreasonably interfere with an individual's work performance or creates an intimidating, hostile, or offensive working environment."); see also, *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1539 (10th Cir.1995) ("evidence that a woman was subjected to a steady stream of vulgar and offensive epithets because of her gender would be sufficient to establish a claim under Title VII based on the theory of hostile work environment."); *Hall v. Gus Construction Co., Inc.*, 842 F.2d 1010, 1013–14 (8th Cir.1988).

■ Even if Lovell's alleged abusive language did not amount to a hostile working environment because of the absence of a sexual advance or sexual content as opposed to gender bias, the court would still hold that plaintiff's complaints could be considered part of a disparate treatment or terms and conditions claim. Regardless of the sexual content of Lovell's alleged ranting, there is sufficient evidence that it affected plaintiff's conditions of employment and that it was directed at plaintiff because she was a woman to be considered a Title VII violation.

We acknowledge that defendant contends there is an absence of gender bias evidence regarding Lovell's allegedly abusive language. While plaintiff appears to admit that Lovell used abusive language against male and female employees, she clearly asserts that she was singled out for Lovell's invective when equally "deserving" male employees were not so targeted. Therefore, giving plaintiff the benefit of the doubt upon a motion for summary judgment, the court believes there is sufficient evidence of sexual bias and a hostile work environment to permit the claim to proceed.

■ Defendant's final argument is that it took corrective action when it learned of the alleged problem, and therefore it should not be liable. The corrective action taken by defendant applied to the incident involving the implication that plaintiff was having an affair. The court believes the implied affair cannot be the core of plaintiff's hostile work environment claim and, therefore, any corrective action regarding this incident cannot provide a complete defense to the claim. We also note that plaintiff alleges that she made a complaint which was not addressed by defendant prior to plaintiff's discharge.

## DISPARATE TREATMENT

Plaintiff's disparate treatment claim has many aspects. According to the pretrial order, plaintiff's disparate treatment claim includes contentions that plaintiff was: transferred without independent basis, more closely scrutinized than other area managers; not paid for days off; forced to use vacation time for days off, and required to report personally to her supervisor when she was to be off for any reason.

In the instant motion, defendant argues that there is no evidence to support various parts of plaintiff's claim. Defendant contends that plaintiff was transferred to different business centers of the plant to improve her performance. Defendant asserts that plaintiff admits her supervisors did not think her performance was satisfactory. Defendant contends plaintiff has no evidence that

male area managers were treated differently or favorably in contrast to plaintiff's treatment. Finally, although the pretrial order does not allege plaintiff was discharged because of her sex, defendant argues that plaintiff was discharged because she was not a satisfactory supervisor and that her sex played no part in the decision.

In response, plaintiff lists episodes of her employment where she was abrasively criticized and sometimes singled out for criticism that similarly situated male area managers did not receive.

Replying to plaintiff's response, defendant contends that the episodes related by plaintiff were not mentioned in her administrative charge or in her in-house complaint.

■ Unfortunately, neither side focuses its arguments and alleged uncontroverted facts on the specific items of alleged disparate treatment described in the pretrial order.[1] Looking specifically at those items and the alleged uncontroverted facts, the court does not believe defendant has sustained its burden of showing that plaintiff cannot prove disparate treatment in these areas. This burden cannot be carried by the mere allegation that plaintiff's proof is lacking. Therefore, this part of defendant's summary judgment motion shall be denied.

## RETALIATORY DISCHARGE

Defendant asserts that plaintiff was discharged because of a company mandate to downsize the managerial force and because plaintiff was not performing satisfactorily as a supervisor. Defendant contends that plaintiff cannot prove an illegal motive for her discharge. To support defendant's position, defendant relies primarily upon documents in plaintiff's personnel file at Goodyear, unsworn "witness statements," and excerpts from plaintiff's deposition.

Plaintiff has objected to the admissibility of the documents and witness statements. Plaintiff has also objected that defendant is relying upon the questions (posed by defense

---

1. Instead, they concentrate on plaintiff's discharge claim, which is discussed later in this order.

counsel) in plaintiff's deposition, rather than the *answers* of the witness. Plaintiff claims that defendant never mentioned plaintiff's performance (as opposed to the downsizing mandate) as a reason for her discharge until after she filed her administrative complaint and further denies that a 10% reduction in force was actually implemented. Plaintiff also notes: that she was discharged only two weeks after her in-house claim of sexual harassment was sustained; that her performance as a supervisor was satisfactory; and that no male area managers were laid off. Finally, plaintiff claims her examples of disparate treatment and harassment provide evidence that her discharge was an act of retaliation.

■■■ The elements of a prima facie case of retaliation are that the plaintiff actively opposed Title VII discrimination, the plaintiff was subject to adverse employment action subsequent to or simultaneously with the protected activity, and a causal connection exists between the protected activity and the adverse employment action. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1420 (10th Cir. 1995). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

■■■ Plaintiff has established a prima facie case of a retaliatory discharge. Defendant has responded with evidence of a non-discriminatory reason for the discharge; namely, a mandate to downsize in combination with plaintiff's alleged poor performance as an area manager. The issue is whether a reasonable jury might decide that defendant's reason was a pretext for unlawful retaliation. In response to defendant's showing, plaintiff has argued: that her performance was comparable to other area managers; that she was not the worst performing area manager according to a "scorecard" system at the plant; that although she was aware of some specific criticism, she was never told that her overall performance was unsatisfactory; that she was not informed she was discharged for poor performance until she had filed an administrative charge of discrimination; and that defendant relies upon inadmissible or untimely evidence.[2]

■■■ "It is not the purpose of a motion for summary judgment to force the judge to conduct a 'mini trial' to determine the defendant's true state of mind. So long as the plaintiff has presented evidence of pretext (by demonstrating that the defendant's proffered non-discriminatory reason is unworthy of belief) upon which a jury could infer discriminatory motive, the case should go to trial. Judgments about intent are best left for trial and are within the province of the jury." *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir.1995). While it is admittedly difficult to sort through the conflicting claims of the parties on this matter, after some significant effort, the court believes plaintiff has offered sufficient evidence of pretext to overcome defendant's motion for summary judgment on the retaliatory discharge claim.

## *RELEASE*

The final argument in defendant's summary judgment motion involves the alleged release agreement signed on August 30, 1991. Defendant contends that the agreement bars plaintiff from bringing this action and that defendant is entitled to damages on its counterclaim because of plaintiff's alleged

---

**2.** Plaintiff argues with some justification that some of the evidence cited by defendant would not be admissible at trial and should not be relied upon on summary judgment. "It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross*, 53 F.3d at 1541. Defendant has apparently attempted to correct this problem with an affidavit attached to its reply brief. This may correct some of the problems asserted by plaintiff, but presents new problems in the form of the untimely presentation of new "facts" in a reply brief. The court finds that plaintiff has not persuasively established that many documents relied upon by defendant would be inadmissible. It appears to the court that defendant could admit them as business records in many instances. So, the court has considered some of the documents relied upon by defendant in the summary judgment motion.

breach of the agreement. As damages, in the instant motion defendant asks for costs, attorney fees, and a refund of the payments made to plaintiff following her discharge. Plaintiff asserts in response that defendant is raising an untimely new claim by arguing that the Title VII action is barred and that defendant should be confined to the relief requested in his counterclaim of "costs" and "attorney fees." Plaintiff also argues, in the alternative, that defendant must elect between the remedies of damages and barring the Title VII action. Finally, plaintiff claims that she was under duress when she signed the alleged release agreement and that there was fraud in the inducement of her signature. Defendant denies that it has made an untimely claim and asserts that plaintiff's fraud defense has been untimely made.

Since the summary judgment pleadings were filed, Magistrate Judge Newman has ruled that plaintiff cannot amend the pretrial order to assert a fraud defense to the counterclaim. As his order notes, quoting FED. R.CIV.P. 16(e), a pretrial order controls the remainder of the case and should be modified "'only to prevent manifest injustice.'" Judge Newman held that the fraud defense was not a mere clarification of the "estoppel" defense which plaintiff had previously alleged in reply to defendant's counterclaim. He further determined that plaintiff was aware of the basis of the proposed defense long before she attempted to assert it and that no persuasive factual basis had been offered in support of the amendment. Therefore, the court could not determine that injustice would result if the amendment was disallowed. Finally, Judge Newman found that prejudice might be caused if the amendment were permitted because discovery would need to be reopened.

Relying on this ruling, this court shall not consider plaintiff's fraudulent inducement argument in response to the release. Although defendant has not asked to amend the pretrial order, Magistrate Judge Newman's order provides a background for considering plaintiff's asserted discrepancies between the arguments made in defendant's summary judgment motion and defendant's contentions in the pretrial order.

The written agreement which allegedly constitutes a release is clearly described in defendant's factual contentions. One of the fact issues mentioned in the pretrial order is whether plaintiff "entered a contract with defendant precluding the filing of this action." While the buzzwords "release" and "bar" are not used in the pretrial order, we believe the issue of whether the agreement releases defendant from liability in this case is sufficiently stated in the pretrial order. The agreement has been mentioned in the pleadings almost from the outset of this case and has been a relevant matter of inquiry during discovery. We believe the parties were cognizant of the issue during the pretrial conference and spoke to it in the pretrial order. So, there is no prejudice from considering this issue, and injustice may result if the issue is barred from consideration.

■ Finally, the fact that such "relief" was not mentioned as part of the damages requested in the counterclaim is not controlling. Nor should defendant be forced to choose between arguing for a bar of plaintiff's claim and arguing for damages. The release may be argued as a *defense* to plaintiff's claims. It may also be argued separately and *offensively* as a basis for damages in defendant's counterclaim. Defendant's "defense" and "offense" may be compartmentalized in the pleadings and pretrial order. Defendant's counterclaim need not describe all of defendant's defenses to plaintiff's claims for relief.

The refund of layoff benefits is not mentioned as an element of damages in the pretrial order or other pleadings. In contrast to the above observations regarding the release defense, the court believes we should strike any claim asking for return of layoff benefits as an element of damages on defendant's counterclaim.

Lastly, we turn to the question of whether defendant should be granted summary judgment because of the release. Although plaintiff has not expressly asserted that she did not make a knowing and voluntary release, we assume since plaintiff has alleged duress that plaintiff is claiming that she did not make a knowing and voluntary release of the claim she is bringing in the case at bar.

■ The Tenth Circuit has held that Title VII claims may be waived by agreement

as long as the waiver is knowing and voluntary. *Wright v. Southwestern Bell Telephone Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991). The totality of circumstances is examined to determine whether a release was knowing and voluntary. *Id.* Relevant factors may be the clarity of the language of the agreement; the plaintiff's education and experience; the amount of time plaintiff had to consider the decision; whether plaintiff knew or should have known his rights prior to signing the release; whether plaintiff had counsel or was encouraged to seek counsel; whether there was an opportunity for negotiation; and whether the consideration given for the release exceeded the benefits to which the employee was already entitled under contract or law. *Id.,* citing *Torrez v. Public Service Co.,* 908 F.2d 687, 689–90 (10th Cir.1990).

Looking at the totality of the circumstances in this case, the court believes there are material issues of fact concerning whether the plaintiff made a knowing and voluntary waiver which preclude summary judgment.

The question of duress has application to plaintiff's Title VII claim, along with the question of whether the waiver was knowing and voluntary. Duress is also an issue pertinent to defendant's counterclaim. This district has predicted that Kansas courts would recognize the concept of economic duress. *Comeau v. Mt. Carmel Medical Center, Inc.,* 869 F.Supp. 858, 865 (D.Kan. 1994). The elements of economic duress are: "1) a wrongful act or improper threat; 2) the absence of a reasonable alternative to entering the agreement; and 3) the lack of free will." *Id.* The court believes an issue of material fact exists as to whether economic duress existed which voids the alleged release agreement in this case.

## CONCLUSION

For the above-stated reasons, defendant's motion for summary judgment shall be denied.

**IT IS SO ORDERED.**