**Patricia M. BARRETT, Plaintiff,**

v.

**TOMKINS INDUSTRIES, INC., Ruskin Manufacturing Div., Defendant.**

**No. 95–4025–RDR.**

United States District Court, D. Kansas.

June 12, 1996.

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, W. Thomas Stratton, Topeka, KS, for plaintiff.

Nancy M. Landis, Office of United States Attorney, Kansas City, KS, Michael F. Delaney, Daniel B. Boatright, Eric W. Smith, Spencer, Fane, Britt & Browne, Kansas City, MO, Aaron C. Johnson, Summers & Johnson, P.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. This case is now before the court upon defendant's motion for summary judgment.

After reviewing the pleadings, the court has assembled a group of facts which appear uncontroverted for the purposes of the summary judgment motion. This process has been hampered for two reasons. First, defendant has not responded directly to several allegedly uncontroverted facts which plaintiff listed in her response to the instant motion. Second, defendant placed several additional allegedly uncontroverted facts in a reply brief. The court does not know plaintiff's position on the new facts in defendant's reply brief. Mindful of these difficulties, the court believes the following facts appear uncontroverted.

*Facts*

Defendant owns the "Ruskin Division" or "Ruskin Operations" which is a group of five manufacturing plants in Kansas, California, Kentucky and Louisiana that make sheet metal products for the construction industry. For simplicity the court shall refer to the business as "Ruskin." Ruskin has offices in Grandview, Missouri. Ruskin was privately owned until 1982 when it was purchased by Phillips Industries. In 1990, Phillips Industries was acquired by defendant Tompkins Industries, Inc.

Plaintiff works as the purchasing manager at the Ruskin plant in Parsons, Kansas, the largest of the five manufacturing plants. Plaintiff started as an office manager at Ruskin in 1975. In 1982, she became an inventory control manager at a Ruskin plant in Paola, Kansas. After this plant closed, in 1984 plaintiff was assigned to the Ruskin plant in Parsons, Kansas where she worked as a division senior buyer. Her job was to improve cost and time efficiency in purchasing, receiving and maintaining inventory materials. Plaintiff reported to Bill Jenkins, the division purchasing manager.

In 1986, Jenkins resigned. Plaintiff was interested in his position and was appointed to fill it on an interim basis. In late 1986, Cosslett Moore was hired to fill Jenkins' position and have the title of "Materials Man-

ager." Moore's job was to oversee purchasing and inventory control at all Ruskin plants. His office was in Grandview, Missouri. The person who hired Moore in 1986 no longer works at Ruskin or for defendant. He allegedly told plaintiff that she was not selected for the position because her husband worked in Parsons and he thought she should stay with her husband.

Plaintiff was given the title of purchasing manager for the Parsons plant. She reported to Moore until mid–1993 when, due to a procedural change, purchasing managers began reporting to their respective plant managers.

Moore resigned in January 1994. His annual salary in 1993 was $52,894.00. He also earned a bonus of $9,642.00.

After Moore resigned, questions arose as to whether and how to replace him. The president of Ruskin, Terry O'Halloran, testified that he expressed the opinion that Moore's position should be eliminated because it was redundant and unnecessary. The vice-president of operations, Damian Macaluso, who was Moore's immediate supervisor, did not share the opinion that the position was superfluous.

Before the decisions on replacing Moore were made, Ron Sevart, an employee at the Parsons plant, was assigned to perform some of Moore's functions on a temporary basis. Initially, Sevart worked two days per week at Grandview, Missouri. After several weeks, he began staying only one day per week. Overall, Sevart made approximately 12 to 15 trips to Grandview from January to June 1994. Sevart does not have any college hours.

When asked, Sevart told Macaluso that he did not think Moore had performed a full-time job as "Materials Manager." He also told Macaluso some time later that it would be a good idea to change the position to a "Materials Analyst" or engineering position.

Before this decision was implemented, defendant solicited and received applications for Moore's "Materials Manager" position. The job opening was advertised externally and internally. The newspaper advertisement listed as requirements: a college degree and a minimum of five years related experience in computer based materials management and inventory control systems. The internal announcement of the position did not list a college degree as a requirement. Plaintiff applied for the job. She was 47 years old at the time. Another woman employed by Ruskin also applied. External candidates were selected and interviewed, but none were considered acceptable. Neither internal candidate was interviewed, but both were considered qualified for the position.

Later, defendant advertised for applicants for the modified "Materials Analyst" position. The advertisement asked for persons with "a 4 year degree in a technical area and 2 + years plant manufacturing experience." The advertisement also stated that major responsibilities for the position included: "analyzing, coordinating and monitoring activities associated with managing material costs as well as recommending and implementing programs and procedures to contain or reduce purchasing, material, freight and scrap costs." The position was not advertised internally.

In the middle of June 1994, defendant hired John W. Hulse, a male under 40 years old, for the position. He had a 4–year degree in a technical area and more than 5 years of plant manufacturing experience. Hulse was interviewed for the position in May 1994.

After Hulse had already been hired, plaintiff wrote a letter inquiring about the status of the job opening for Materials Manager. She had not been informed that the position had been downgraded. However, her husband had seen the newspaper advertisement for the downgraded position. In response to the letter, plaintiff was told that the position had been downgraded. She was also told that since the starting salary ($35,000) was less than plaintiff's salary, it was thought that plaintiff would not be interested. Plaintiff replied that she was interested because it would give her an opportunity for promotion within the company.

On June 22, 1994, the vice president of operations, Damian Macaluso, came to Par-

sons to interview plaintiff for the downgraded position. This was done apparently as a courtesy, but plaintiff was not told and did not know that the position had already been filled. Plaintiff also was not told during the interview that she did not have the academic requirements which were required according to the job advertisement. At the conclusion of the interview plaintiff said that she was excited about the position and was told that the company would make a decision in the next week or two.

On June 29, 1994, plaintiff was told that the position had been filled from the outside. Again, plaintiff was not told that she did not meet the requirements for the job.

Hulse was hired at a salary of $35,000.00. Plaintiff was paid a salary of $38,143.00 as of June 1993.

No females have held a management-level position in the operations department of Ruskin Division. Plaintiff is the highest paid female in the operations department.

In her work with defendant, plaintiff has conducted job cost studies; made materials purchasing decisions; designed a computer program to keep track of inventory and purchasing information; found and evaluated new vendors; and maintained a file of the most current engineering drawings.

When O'Halloran made his first visit to the Parsons plant as Ruskin vice-president of operations (before he became president of Ruskin), he was upset by a question plaintiff asked regarding inventory control and lead-time goals.[1] He pointed his finger at plaintiff and said: "Your job title little lady is to make sure this plant never runs out of material." Later, he asked a supervisor at the plant, "What's wrong with Patty?" Plaintiff was informed the next day that she had upset O'Halloran and had gotten off on the wrong foot.

Moore has stated in an affidavit that plaintiff was loyal, thorough, professional and successful in her position. He lauded plaintiff's on-the-job experience reading blueprints and part drawings. He commented that, "from a purchasing or materials perspective, she knew that aspect of the business as well as anyone." He was aware that plaintiff aspired to be promoted to his position. Nevertheless, he told plaintiff after he announced his intent to leave, and on other occasions, that the company would never hire a woman to fill his position. He considers the sheet metal business to be male-oriented and male-dominated. He also stated that men may perceive plaintiff as threatening when a male employee acting in the same way would be considered aggressive and dedicated.

According to Moore, in 1992 O'Halloran referred to a group of employees at Ruskin, including Moore, as overaged and overpaid. Moore believes he was a busy, productive employee and that if his position actually was perceived as superfluous, O'Halloran would have eliminated the job before Moore resigned.

Finally, Moore has reviewed a job description form for the Materials Analyst position. He stated that his job duties as a Materials Manager were the same as those for the Materials Analyst.

*Summary Judgment Standards*

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 91 L.Ed.2d 202, 106 S.Ct. 2505, 2509 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L.Ed.2d 265, 106 S.Ct. 2548, 2552 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving

---

1. O'Halloran has a different recollection of the question. For purposes of summary judgment, the court accepts plaintiff's recollection of the events.

party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 89 L.Ed.2d 538, 106 S.Ct. 1348, 1355–56 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

The factual record must be examined in the light most favorable to the party opposing summary judgment. *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995). " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Id.,* quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Claims of the Parties*

In this case, plaintiff alleges age and sex discrimination in three job actions: 1) not hiring plaintiff to the position of Materials Manager; 2) downgrading the position of Materials Manager to Materials Analyst; and 3) not hiring plaintiff to the position of Materials Analyst. Defendant asks for summary judgment against each claim on the grounds that plaintiff cannot prove that defendant acted because of age or gender bias. Defendant contends that the job actions were taken because defendant wanted to save money and focus on nonmanagerial engineering functions for the materials position left open by Cosslett Moore.

*Analysis on Summary Judgment*

The litigants attempt to argue the three job actions separately. But it is difficult or impossible to do so and, as a consequence, the parties refer to the same evidence and arguments as they discuss each claim. This is understandable since defendant claims the decision to downgrade obviated any decision

to fill the Materials Manager position. Moreover, the decision to downgrade created the opening for a Materials Analyst. Finally, the decision to downgrade, regardless of its motivation, may have had an impact upon the compensation paid to Cosslett Moore's replacement.

Because of the difficulty in separating the job actions, we believe it is better to ask two main questions in this litigation: first, was plaintiff discriminated against on the basis of age or sex when defendant filled the materials position left open or created after Cosslett Moore resigned; and, second, if the answer to the first question is "yes," what compensation should plaintiff receive.

■ There is evidence in the record from which a reasonable jury could conclude that: plaintiff sought the position left open after Cosslett Moore resigned; plaintiff was qualified for the position; the position was filled by a male under the age of 40; and plaintiff is a female who was 47 when she first applied for the position. This is sufficient to establish a prima facie case and a presumption of discrimination. See *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1469 (10th Cir.1992).

■ There is also evidence in the record from which a reasonable jury could decide that defendant's actions were motivated by a belief that a woman or an older person should not hold a managerial position, specifically the Materials Manager job, at Ruskin. This is the testimony of Cosslett Moore. The court is not convinced at this stage that this testimony is incompetent and should be stricken from consideration for the purposes of the instant motion. Nor can the relevance of the testimony be limited to the Materials Manager position, since it is arguable that the Materials Analyst position was essentially the same.

Finally, there is circumstantial evidence of an effort to deny plaintiff and another woman the opportunity of replacing Cosslett Moore. Plaintiff and another woman were qualified candidates for the Materials Manager job, but they were not interviewed. When the

candidates who were interviewed were deemed unacceptable, the position was modified and readvertised externally, but not internally. Plaintiff was not notified of the modification of the position until she made inquiry. Then, plaintiff was interviewed, although the position was already filled. Moreover, while she supposedly lacked the academic requirements for the modified position, plaintiff was not so informed before or during the interview. There is also evidence from more than one source that plaintiff was qualified for the Materials Manager position and that the position was the same or very similar to the Materials Analyst position. From the above-described actions and evidence, a reasonable jury could conclude that defendant's claims that plaintiff was not qualified for the modified position and that the Materials Manager position was altered for economic reasons are a pretext for discrimination.

Of course, the court reaches these conclusions reading the record in a light favorable to plaintiff. Moreover, if plaintiff does prove she was discriminated against, she will have the burden of proving what her level of pay would have been if she had been promoted or transferred after Cosslett Moore resigned. The court believes that is an issue of damages upon which the question of downgrading may be relevant. But, that issue differs from the question of liability before the court upon the instant summary judgment motion.

*Conclusion*

For the above-stated reasons, defendant's motion for summary judgment is hereby denied.

**IT IS SO ORDERED.**