Michelle HARDING, Plaintiff,

v.

The GOODYEAR TIRE AND RUBBER COMPANY, Defendant.

No. 95–4035–RDR.

United States District Court, D. Kansas.

June 26, 1996.

Pedro L. Irigonegaray, Irigonegaray & Associates, Topeka, KS, Richard D. Anderson, Topeka, KS, for plaintiff.

William G. Haynes, Frieden, Haynes & Forbes, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964. Plaintiff was terminated by defendant in 1993 at the end of a probationary period of employment. Plaintiff claims she was terminated because of her sex. Defendant asserts that plaintiff was terminated because she had not demonstrated sufficient proficiency in the operation of a forklift, particularly a forklift paddle or squeeze. There are also issues involving conditions of employment. This case is now before the court upon defendant's motion for summary judgment.

*Facts*

The following facts appear to be uncontroverted or must be considered as true reading the record in a light most favorable to plaintiff.

Plaintiff began work at the Topeka, Kansas facility of defendant Goodyear on September 13, 1993. Plaintiff was terminated on October 20, 1993. While working for defendant, plaintiff was assigned to the warehouse of defendant's distribution center. The superintendent of the warehouse during the relevant period in this case was Ray Ortega.

When an employee is first hired by defendant, there is a 30–day probationary period before the employee can be added to the seniority list as a permanent employee. During the probationary period, an employee is assigned to a variety of tasks to become acquainted with the range of work to which the employee may be assigned if the employment is continued. A new hire is not expected to master every task as a condition for being promoted beyond probationary status. Learning and improvement is expected during and after the probationary period.

On the same day that plaintiff started, two males, Wade McNorton and Phil Rogers, also started as probationary employees at the warehouse.

Warehouse employees are expected to operate a forklift, particularly on weekends, although there are many other functions. Experience with a forklift is considered a plus on an application to work at the warehouse, but it is not a requirement.

Plaintiff believes she was assigned to the raildock, one of the most physically demanding parts of the job, more often than McNorton and Rogers. She thinks this prevented her from gaining experience in other parts of the warehouse. Plaintiff was assigned to unload boxcars more frequently than McNorton and Rogers. However, plaintiff also worked different tasks during her employment, including the "line," earthmovers, tearing down steel pallets, and light truck loading.

Ortega often gave plaintiff feedback during her probationary period. He gave positive and critical evaluations to plaintiff, although plaintiff testified that he softened any criticism by stating that she should not worry about it. Ortega based his comments on reports received from supervisors. He had little time to oversee probationary employees. When he spoke to plaintiff a week before plaintiff was terminated, he did not tell her she was in danger of losing her job or

of not making permanent employment status. In an affidavit, a union officer states that, contrary to usual practice regarding probationary employees, he was not told by Ortega in advance that plaintiff was performing poorly.

On September 24, 1993, plaintiff wore a tank top to work. Ortega directed that plaintiff put something else on, and this was arranged through a supervisor. It is disputed how revealing the tank top was and whether it was more revealing than tank tops worn by other workers. Other men and women had worn tank tops to work prior to September 1993. Tank tops may have been barred by the company dress code, but the record indicates that the dress code did not *expressly* prohibit tank tops. Plaintiff was not disciplined for wearing the tank top. However, she did not wear a tank top to work again.

While the tank top incident was not mentioned as grounds for terminating plaintiff, an affidavit indicates that Ortega told a union official that plaintiff was discharged because she was a distraction and because he did not need another "Carol" in the warehouse.[1] Ortega admits that he mentioned "Carol" but stated that it was in the context of not wanting another employee who required assistance frequently. Ortega denies that he said plaintiff was terminated because she was a distraction. He also denies that the tank top incident played any part in the decision to discharge plaintiff. He admits, however, that he said plaintiff was a distraction.

On September 28, 1993, Ortega told plaintiff that she was not handling truck tires proficiently and that she was not showing enough initiative. These comments were based on reports he had received from supervisors.

On October 4, 1993, Ortega's evaluation indicated that plaintiff was making progress and encouraged plaintiff to keep up the good work. There was no criticism.

During an October 13, 1993 evaluation, Ortega criticized plaintiff for having another employee assist her when she almost ran out

of fuel while operating a forklift. Otherwise, plaintiff's operation of the straight forklift was satisfactory. On the same day a supervisor, Mr. Heller, said that plaintiff did a fine job with the forklift. The next day the same supervisor said that plaintiff did well using the buggy and the power truck. He reported to Ortega that plaintiff was doing well. Heller also testified in a deposition that he did not see any reason why plaintiff should have been terminated. However, he did not observe plaintiff using the forklift with the paddle or squeeze and admitted that these were important tasks.

On October 15, 1993, a supervisor, Mr. Thomsen, reported that plaintiff had improved but still needed improvement on lift truck operations. Plaintiff's first effort on the paddle forklift was October 16, 1993. Thomsen reported that she needed more practice. The next day, October 17, 1993, Thomsen stated that plaintiff:

> "Still has a lot to learn and needs time to practice this job. Started off shaky, but at end of shift improvement started to appear. At this time she cannot run line by herself on Sun. night."

On October 20, 1993, Ortega informed plaintiff that she was being terminated. He told plaintiff that she was still shaky on the forklift. Ortega has stated in an affidavit that he based his conclusion on reports he received from supervisors, primarily Thomsen. Ortega believes employees need to be proficient stacking tires with a paddle forklift. Ortega has also stated that it is important for new hires to stack tires well. As low seniority employees, new hires are often assigned to stack tires on weekends, when there are fewer employees at the warehouse to assist them or to do the work. During the termination interview, plaintiff said that she needed more practice on floor stock. However, plaintiff had more training time on the forklift than other probationary employees who were retained.

Plaintiff has identified six male probationary or vacation relief employees who became permanent employees although their records

---

1. "Carol," the affidavit explains, is a former employee at the warehouse who worked without a bra and allegedly exposed her breasts when she wanted others to assist her with her work.

contained criticism of their skills on the forklift. The files of some of the workers also contain criticism of their initiative. Four of these employees were vacation relief workers who did not have a 30–day probationary period to prove themselves. The files of some of these employees also contain some good reviews of their forklift work. Defendant asserts that these employees' performances improved before they were made part of the permanent workforce.

Ortega believed plaintiff could have become proficient with the paddle forklift in time, but there was not enough time in the probationary period for her to make sufficient progress.

On October 17, 1993, the evaluation report on Wade McNorton stated that he needed more practice and time before he could run "2 dock by himself on Sunday 3rd." McNorton admitted in his final evaluation that he didn't quite know the marshalling area at first but began to understand it better.

A veteran Goodyear employee has stated in an affidavit that plaintiff did as good or better job as most trainees do in stacking tires and lifting and handling tires on the rail dock. He also stated that he was told by Ortega in late spring of 1993 that "as far as I am concerned, there would not be any women in the warehouse because I have had too much trouble with them before." However, Ortega has stated in an affidavit that he has recommended four female employees for permanent employment and employed several female college students to work as vacation relief. Another affidavit supports Ortega's statement regarding women he has recommended for permanent employment or vacation relief.

*Summary Judgment Standards*

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

The factual record must be examined in the light most favorable to the party opposing summary judgment. *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir.1995). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Id.*, quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Plaintiff's Claims*

According to the pretrial order, plaintiff contends she was subjected to sex discrimination during her employment in that: 1) she was frequently given more physically demanding assignments than the male trainees; 2) she was not afforded the same training opportunities as male trainees; 3) she was subjected to a discriminatory dress code; 4) she was subjected to discriminatory evaluations of job performance; and 5) she was denied advancement from probationary to

permanent status and was terminated from employment, not because of an inability to perform the work, but because of her sex. Obviously, the most significant claim is the termination claim. To some extent it appears that the other matters are referred to as evidence of a discriminatory motive in connection with the termination claim, as opposed to separate claims for relief. Nevertheless, the first four claims are mentioned separately in the pretrial order, so the court shall resist the temptation to treat this matter as strictly a termination case.

*Analysis on Summary Judgment*

■ Viewing the record in a light most favorable to plaintiff, the court believes the summary judgment motion must be denied. There is evidence from which a reasonable jury could conclude that plaintiff was given more physically demanding assignments than her male counterparts; that she did not have the same training opportunities; that the dress code was applied to her but not to others; that her evaluations were more strictly formulated and less leniently considered than those of male employees; and that she was terminated because of gender bias. There is both circumstantial and direct evidence of gender bias in this case. There is also evidence that plaintiff was qualified to continue her employment with Goodyear.

Defendant has produced evidence of a nondiscriminatory motive for plaintiff's termination. Defendant indicates that plaintiff's performance on the forklift at the end of her probationary period had not improved sufficiently for her to work the jobs that new hires normally must perform. But, plaintiff has countered this evidence with proof from which a reasonable jury might draw the conclusion that plaintiff's forklift performance was a pretext for discrimination. Plaintiff received praise from various sources for her work, including some of her work with a forklift. Male probationary employees were evaluated often with the view that their performance would improve with time and experience. Plaintiff could argue that she was not afforded the same latitude, and that instead her evaluations were marked with a skepticism not applied to male employees. There is evidence that defendant decided to

terminate plaintiff as a distraction rather than reprimand workers who allowed themselves to be distracted. Finally, there is direct evidence of gender bias in statements allegedly made by Mr. Ortega.

On the basis of this review of the evidence, the court believes defendant's motion for summary judgment must be denied.

**IT IS SO ORDERED.**